HANNAH and another, Respondents, vs. KNUTH and others, Appellants.

*October 26—November 16, 1915.*

*Contracts: Agency: Subscription of money to operate mines: Selection of agents: When subscribers bound: Incurring debts: Joint liability of subscribers: Evidence: Minutes of meetings: Competency: Appeal: Harmless errors.*

1. Where stockholders, including the president and directors, in a mining corporation signed an agreement whereby they severally subscribed certain sums "to a fund to be used in buying such articles as are necessary to operate the mill" of said company, "and to pay such bills as are pressing by having them assigned to our representative, the balance to be used to operate the mines and mill . . . , providing the directors pledge to us the gross output of the operations or enough of the product to repay us the money subscribed and guarantee to us that none of the money received by the operation of the mill shall be used for any other purpose than running said mill until we have been repaid," etc., each subscriber, whether he signed before or after the acceptance of the proposition by the directors of the company, conferred upon his associates, by clear implication, the power to create the agency necessary to carry out the purposes

of the agreement, and was bound by their action even though he himself neglected or refused to take part in the selection of such agents.

2. Where such proposition was presented by one or more of the subscribers at a meeting of the directors and was accepted by them, all subscribers were bound by such acceptance; and the minutes of such meeting were competent evidence as being part of the *res gestæ.*

3. So, also, the minutes of a subsequent meeting of the subscribers reciting that thirty-three of them were present, some of whom were identified by name, that the minutes of the directors' meeting were read to them, and that they elected an advisory board of subscribers to act with the directors and also a trustee for the subscribers, were competent evidence as being in the nature of admissions.

4. The representatives of the subscribers, acting with the directors, having operated the mines and mill pursuant to the agreement and having incurred certain debts for work and materials in the attempt, through such operation, to repay to the subscribers the amounts advanced by them, all of the subscribers became jointly liable for the debts so incurred.

5. The testimony of the manager employed to take charge of the mines and mill under the agreement was sufficient to prove the claims for work and materials, and it was not necessary to prove each such claim by the testimony of the person who did the work or furnished the material.

6. Where a cause is tried by the court without a jury, the admission of incompetent evidence is not available as error on appeal unless some proposition essential to sustain the judgment has no evidence to support it other than such incompetent evidence.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

For the appellants there was a brief by *Kronshage, McGovern & Hannan,* and oral argument by *Timothy J. Hannan.*

For the respondents there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *Charles E. Monroe.*

TIMLIN, J. To maintain the issues arising upon a complaint charging that the defendants were a voluntary association and copartners, at the times mentioned, engaged in operating a mine in Montana, and that a large number of persons

named during such time performed services or sold and de-
livered material to the defendants, and that all these claims,.
aggregating about $4,000, were assigned to the plaintiffs;
and an answer amounting to a general denial; the plaintiffs.
introduced in evidence a writing signed by each of the de-
fendants with a sum set opposite his or her name, and this.
writing was as follows:

"Milwaukee, Wis., May, 1908.

"We, whose signatures appear below, hereby subscribe the
amount set opposite our names to a fund to be used in buying
such articles as are necessary to operate the mill of the Mil-
waukee Gold Extraction Co., and to pay such bills as are
pressing by having them assigned to our representative, the
balance to be used to operate the mines and mill of said com-
pany, providing the directors pledge to us the gross output of
the operations or enough of the product to repay us the money
subscribed and guarantee to us that none of the money re-
ceived by the operation of the mill shall be used for any other
purpose than running said mill until we have been repaid.

"It is understood that the property bought with this money
shall remain our property until we have been fully repaid,
and that in case that after making the repairs of the mill
should anything prohibit us from operating the mill that we
shall stand as creditors of said company.

"Subscription: $100.00, *H. Knuth,* 1114 Chambers St.,
paid 6/16/08," etc., etc.

This written contract was supplemented by written evi-
dence consisting of (1) the corporate records of a meeting of
the directors of the Milwaukee Gold Extraction Company
held June 15, 1908, showing that the writing first mentioned
was produced at that meeting by *Mr. Dwight,* the president
of the corporation and one of the signers of the first men-
tioned writing, and that thereupon resolutions were adopted
in effect accepting that proposition, permitting such an asso-
ciation to operate the mill until such time as the output there-
of has repaid to them the money advanced by them and six
per cent. interest, not, however, to exceed four months from
and after July 1, 1908, and providing that the board of di-

rectors advise with, consult, and co-operate with the subscrib-
ers to said writing in all things pertaining to the operation of
the mill, the purchase of material, and the payment of press-
ing bills against the company.   It is contended by appellants
that the record of the meeting of the corporation directors
was incompetent as against the subscribers to the writing
first mentioned.   (2) Minutes of a meeting of the subscrib-
ers held on the evening of June 15, 1908, reciting that thirty-
three subscribers were present and organized and that there
was read to them the minutes of the directors' meeting men-
tioned and that three of the subscribers were by this meeting
elected to act with the board of directors of the corporation
as an advisory board and that *Mr. Dwight* was elected trustee
for the subscribers.   It is contended that this writing was not
competent evidence.

Other evidence was introduced which showed (1) that all
the subscribers were stockholders of the Milwaukee Gold Ex-
traction Company and *O. F. Dwight,* one of the subscribers,
was its president and a director, and that all of the seven di-
rectors of the Extraction Company were subscribers; (2) that
on the afternoon of June 16, 1908, four of the seven directors
of the Extraction Company and one of the advisory board of
the subscribers held a meeting and employed one E. Hiland
Pitcher to take charge of the mine and mill in Montana, fix-
ing his salary.   *Mr. Dwight* was present at this meeting and
Mr. E. Hiland Pitcher went to Montana, took charge of the
property, and under his administration the liabilities alleged
were incurred.   Considerable gold was realized by this oper-
ation, but it was used up in paying expenses, leaving the
claims sued on unpaid.   Appellants contend that there is no
evidence identifying the thirty-three subscribers present at
the subscribers' meeting of June 15th, and no subsequent
meeting of the subscribers, hence the latter were not bound
by these doings of *Dwight,* Pitcher, and the directors, and the
so-called advisory board, because these men were not ap-

pointed by all the subscribers, and while their action might be binding upon the subscribers who procured and secured their appointment it could not affect subscribers who were not shown to have been present at such meeting and who are not shown. to have taken any part in appointing E. Hiland Pitcher, or any one else, to take charge of the property and operate it, or in appointing the advisory board, or in appointing *Dwight* as trustee. It is contended by appellants that the subscription agreement above referred to and presented at the directors' meeting of the Extraction Company was not at that time signed, but we think the evidence tends more strongly to show that before that it was signed by most of the defendants. It is further contended that this paper was not at that time signed by all the defendants, and we.think this is correct. There seem to be forty-six signers, and Schissler, Buschman, and *Dwight* are the thirty-third, thirty-fourth, and thirty-fifth names. There seems to be evidence by inference that the eleven names following were added after the meeting of June 15th. It is quite certain that *Dwight* and the other directors of the Gold Extraction Company had signed the paper before it was presented to the directors' meeting of June 15th. All points made by the appellants rest upon the basic proposition that the evidence does not tend to show anything more than a subscription of money by a certain group of stockholders for the purpose of paying present and pressing obligations of the corporation mentioned and operating the plant only so far as .the money thus subscribed would carry on such operation.

This case, however, largely turns upon the construction of the written instrument above quoted. A proper construction of that instrument solves all the questions in this case relating to the competency of evidence and to the right of recovery. Whoever signed that instrument before the directors' meeting of June 15th and permitted one or more of his associates to present that paper bearing his signature to the di-

rectors' meeting for acceptance is certainly bound by such acceptance, and whoever signed it after that meeting, signed it with the knowledge that he promised a sum of money "to be used in buying such articles as are a necessity to operate the mill." To be used by whom? Each signer knew that there was to be an agency for the disbursement of the fund. He knew that the bills were to be paid by some one acting as agent for the subscribers and that the paid bills were to be assigned to the representative of the subscribers. "The balance to be used to operate the mines and mill of the said company." To be used by whom? Manifestly not by all acting in mass, but by some representative person or persons. It was next provided that the directors pledge to the subscribers the gross output of the operation or enough of the product to repay them the money subscribed and that the directors should guarantee to them that none of the money received by the operation of the mill, that is to say, none of the proceeds of the operation, should be used for any other purpose than for running said mill until the subscribers had been fully paid. This informed every signer that the directors of the company, all of whom were also signers, would continue to have a voice in the operation of the mill and in the receipt of the proceeds of such operation. Without continuing this analysis it is apparent that every man who signed this subscription agreement did so with the understanding that he was to be represented by some person or persons in buying articles of necessity, in paying present bills of the corporation, in holding such bills as trustee for him and his cosigners, *and in operating the mines and securing the proceeds of such operation for the benefit of such subscribers.* After signing such an instrument he could not disable the other signers from proceeding with the enterprise by merely neglecting or refusing to take any part in the selection, appointment, or authorization of such agents. In this respect he would be bound by the action of his associates who did take such part, because by this writ-

ing, by clear implication and by the necessity of the situation he conferred upon his associate subscribers the power to create the agency necessary to carry out the purposes of the subscription contract. For this reason the minutes of the directors' meeting of June 15th accepting the proposition were competent as *res gestæ*. For this reason the minutes of the meeting of the subscribers on June 15th were in the nature of admissions and competent, because it was affirmatively shown that thirty-three of the subscribers were present at that meeting and some of those present were identified by name.

This cause having been tried by the court without a jury, the admission of incompetent evidence cannot be assigned as error on appeal unless some proposition essential to sustain the judgment has no evidence to support it other than such incompetent evidence. We find no such situation here. There seems to be ample evidence, oral as well as written, to support the finding that pursuant to the subscription agreement quoted parties representing the subscribers, acting with the directors of the Gold Extraction Company, operated the mines and mill of the latter company for the purpose of attempting to repay to the subscribers the amount advanced by each. They were unable to make such payment, but in the attempt they incurred the liabilities for which judgment has been rendered against them in the court below. These liabilities were therefore incurred by agents of all the subscribers acting under the authority of all, although appointed by less than all, because the subscribers entered into a contract which could only be carried out by and through agents appointed for that purpose, thus conferring upon their associates authority to appoint such agents in case they failed or neglected to make the appointment or to take part in the appointment themselves. No other construction would give force and effect to the subscription contract. Whether the representatives of the subscribers were acting under a lease or a license or a mere informal agreement with the directors is imma-

terial. It was not necessary to prove each of the assigned claims by the testimony of the person who did the work or furnished the material, although such testimony was competent so far as it went. The testimony of Pitcher, the manager who incurred these obligations, was sufficient. The trial court properly ordered judgment to be enforced against the joint property of all the defendants and the separate property of each except the separate property of the defendant E. Hiland Pitcher, because the latter was not served with process and did not appear in the action. We believe other findings of fact are well supported by competent evidence, and the judgment should be affirmed.

*By the Court.*—Judgment affirmed.