CHARLES T. BROWN, Appellant, v. ARTHUR B. LEACH and Others, Comprising the Firm of A. B. LEACH & Co., and A. B. LEACH & Co., INC., Respondents.

First Department, October 24, 1919.

**Partnership — agreement creating joint adventure — continuation of project by one joint adventurer for his own benefit — liability to account to coadventurer.**

The president of a corporation holding the stock of an oil company desiring to finance said company sought the assistance of the plaintiff and induced him to endeavor to raise money for said purpose. The plaintiff interested the defendant in the project, and the corporation, the plaintiff and defendant entered into a written agreement whereby both the plaintiff and defendant were to advance certain sums of money to be secured by the notes of the oil company and by a certain proportion of its stock and bonds to be issued. It was specifically agreed that the profits of the transaction were to be divided between the defendant's firm, which was subsequently incorporated, and the plaintiff in proportion to the moneys advanced by them to the oil company. As the plaintiff refused to accede to the defendant's request that he decrease his percentage of compensation the defendant notified the plaintiff that he would exercise his option to refuse to advance moneys and that they both should be " free to take such further steps in the matter as we may elect without prejudice," to which the plaintiff made protest, contending that the defendant was not free to take further steps in the matter by eliminating the plaintiff therefrom and acting for his own benefit. On all the evidence *held*, that the plaintiff and defendant's firm became joint adventurers in the enterprise and that the defendants could not exclude the plaintiff for the purpose of securing the entire benefits to themselves.

That as the defendant after its incorporation and in spite of the plaintiff's protest had agreed to finance the oil properties for its own benefit, it should be required to account to the plaintiff for his share of the profits.

A joint adventure is subject to the same rules as a technical partnership. Where the partnership has for its object the completion of a specified piece of work, or the effecting of a specified result, it will be presumed that the parties intended the relation to continue until the object has been accomplished and until that time arrives one partner cannot terminate the partnership and continue the enterprise for his own benefit, nor can one partner exclude the other without his consent. While the agreement may be terminated by consent, the consent must be mutual.

Copartners and joint adventurers owe the duty of utmost good faith to their copartners and coadventurers, and until the copartnership is terminated or joint adventure is abandoned, a copartner or joint adventurer cannot

act for himself. If he does, and thereby obtains for himself the benefits that otherwise would accrue to the partnership or joint adventurers, he will be held liable in equity to account to his copartner or coadventurers.

APPEAL by the plaintiff, Charles T. Brown, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 11th day of March, 1919, upon a decision of the court after a trial at the New York Special Term.

*John C. Tomlinson* of counsel [*James B. Mackie* with him on the brief; *Tomlinson, Coxe & Tomlinson*, attorneys], for the appellant.

*Henry M. Earle* of counsel [*Hornblower, Miller, Garrison & Potter*, attorneys], for the respondents.

PAGE, J.

Richmond Levering & Company, Inc., prior to June 27, 1917, owned all the issued stock of the Island Oil and Transportation Corporation of the par value of $22,500,000. The latter corporation owned or controlled valuable oil properties in the Republic of Mexico, including an oil well therein known as "Tepetate No. 9" and a concession for building a pipe line for the transportation of oil from the well to the seacoast for shipment. This well was of great intrinsic value producing from 70,000 to 100,000 barrels of oil a day. The Island Oil and Transportation Corporation did not have the money necessary to properly develop its oil properties, build the pipe line and proper buildings and tanks for the storage of the oil, and also was obligated to make certain payments on the purchase of its property and for concessions held by it. Prior to June 1, 1917, Richmond Levering, the president of Richmond Levering & Company, Inc., called on the plaintiff and explained to him the situation of the company and its need for immediate financial assistance. The plaintiff loaned to Richmond Levering & Company, Inc., the sum of $9,000 and a further sum of $10,000 for the purpose of protecting its properties and rights, and had procured a further sum of $15,000 by indorsing and securing the discount of its note. The plaintiff suggested a scheme for financing the Island Oil and Transportation Corporation, and secured from Levering

the privilege of financing the corporation. Levering first authorized the plaintiff to secure loans of money for the use of the corporation, and the plaintiff made persistent but futile efforts to obtain the loans from trust companies with which he had business dealings. He then brought the matter to the attention of Arthur B. Leach of the banking firm of A. B. Leach & Co., and made a proposition to him for the financing of the Island Oil and Transportation Corporation. He informed Leach of the properties, rights and securities of the corporation and of their value, and later introduced him to Levering, and there was discussed between the three the financing of the corporation. Prior to that time Leach had never heard of the Island Oil and Transportation Corporation or of its properties and securities, and had not met Levering. Plaintiff had suggested to Levering the plan of selling short time obligations of the corporation secured by its debentures, and repaying the loans out of the proceeds of the sale of its stock and bonds. The plaintiff endeavored to interest Leach because his firm was able to finance enterprises in which it was interested, and sell to the public the obligations or securities of corporations of which it approved.

After several interviews the parties arrived at an agreement which was reduced to writing and signed on the 27th day of June, 1917. The agreement is quite lengthy but may be summarized as follows: It was between Richmond Levering & Company, Inc., party of the first part, and A. B. Leach & Co. and the plaintiff, parties of the second part. The parties of the second part agreed to advance to the party of the first part $50,000 upon receipt of a note of the Island Oil and Transportation Corporation for $300,000 in favor of the party of the first part and to be indorsed by it and Richmond Levering individually, payable in sixty days with interest at five per cent, and to be secured by fifty-one per cent of the stock of the Island Oil and Transportation Corporation and $160,000 face value of the debentures of said corporation. Within thirty days the parties of the second part were to advance the further sum of $250,000, or such part thereof as the directors of such corporation might require. The parties of the second part to have the privilege of sending to Mexico their representatives to investigate and test the

oil well and the properties of the Island Oil and Transportation Corporation for the purpose of obtaining a full report of the same. To cover the expense of this investigation and as compensation for the advance of the $300,000, $500,000 par value of the stock of the Island Oil and Transportation Corporation was to be delivered with the said note to the parties of the second part and retained by them. Within sixty days the parties of the second part agreed to notify the party of the first part, in writing, whether they elected to exercise the option which was thereby granted to them, to advance to the Island Oil and Transportation Corporation $1,000,000 in such amounts and at such times as the board of directors thereof might require. In that event the Island Oil and Transportation Corporation was to issue notes in such denomination and to such payees as the parties of the second part might designate, all payable three years after their date, with interest at six per cent, aggregating $1,300,000, secured by $2,600,000 face value of the debentures of the said corporation, and thereupon the $300,000 note was to be canceled. In the event that the parties of the second part gave notice that they would not exercise the option, thereafter the $300,000 should become due and payable within sixty days. If, however, the parties of the second part decided to exercise the option, they would be entitled to receive $11,500,000 par value of the stock of the· Island Oil and Transportation Corporation.

The plaintiff and Leach agreed to indorse and discount the $300,000 note. Leach was to sell the securities of the corporation and thus secure the money to pay the note and furnish the $1,000,000 called for by the contract. The profits of the transaction were to be divided between them, A. B. Leach & Co. receiving two-thirds and the plaintiff one-third. It was thus contemplated that the corporation could be financed without the furnishing of cash by the Leach firm or the plaintiff in excess of the initial payments made by each of them. Plaintiff experienced difficulty in arranging the discounting of the $300,000 note. Leach proposed that instead of one note for $300,000, there should be two notes, one for $200,000, which he would take and advance the money,

First Department, October, 1919. [Vol. 189.

and the other for $100,000 which plaintiff could get discounted, Leach agreeing to indorse the note and furnish from the common fund such collateral as might be necessary. Plaintiff thereupon arranged to have the note discounted by a trust company, but when he called upon Leach to indorse the note as he had agreed, Leach declined, but having recently incorporated his copartnership, offered to indorse the note in the name of the corporation. The president of the trust company refused to accept such indorsement, as a corporation would have no power to become an accommodation indorser. Leach thereafter, although refusing to indorse the note, demanded that the plaintiff should advance the $100,000, which plaintiff could not do. In the meantime an expert engineer had been sent to examine the property of the Island Oil and Transportation Corporation in Mexico. To the expense of this examination the plaintiff and A. B. Leach & Co. contributed. On August 14, 1917, Leach received the report of this engineer, which was favorable except that it stated that the cost of the pipe line would be greater than estimated. On the fifteenth of August Leach had an interview with plaintiff in which he demanded that plaintiff decrease his share of the compensation from thirty-three and one-third to five per cent. Upon plaintiff's refusal of this offer, Leach offered to go on with the enterprise, if plaintiff would accept seven and one-half per cent as his share. The plaintiff refused and Leach then gave notice that he would not exercise the option to further finance the Island Oil and Transportation Corporation, and immediately thereafter so notified Richmond Levering. Leach wrote plaintiff on August sixteenth informing him that he would not exercise the option and closing with the statement: " It is the understanding that we are each free to take such further steps in the matter as we may elect, without prejudice." Plaintiff in response wrote that it had been brought to his attention that Leach was contemplating dealing with Levering and ignoring his rights in the premises and protested that they were not free to act separately. Again on the twenty-first of August plaintiff wrote Leach: " The termination of this option, I am advised, will not leave you free to take such further steps in the matter as you may elect. You cannot use the incident of terminating

the option to eliminate me from the situation, and then avail yourself of the information, introductions and suggestions I have given you for your sole profit." Leach knew before the end of August that there was a payment of $90,000 due from the Island Oil and Transportation Corporation upon its Mexican properties. Richmond Levering represented to plaintiff that A.. B. Leach & Co. was definitely out of the negotiations and that it would be necessary for him to secure money from other parties in order to save the property to the Island Oil and Transportation Corporation. Believing this representation, the plaintiff was induced to release Richmond Levering & Company, Inc., from all obligation to him under the contract between Richmond Levering & Company, Inc., A. B. Leach & Co. and himself. This release was evidenced by a letter dated August 24, 1917. On Sunday, August 26, 1917, Levering made by telephone an appointment to, and did, meet Leach at a golf club on Long Island and then showed him the letter which he had obtained from plaintiff, and made an appointment to meet Leach at his office in New York the next day. Negotiations were then carried on between Levering and Leach on the twenty-seventh and twenty-eighth of August which resulted in a contract dated August 30, 1917, for the financing of the Island Oil and Transportation Corporation on substantially the same lines and for the same compensation as theretofore provided in the contract of June 27, 1917, except that the plaintiff was eliminated therefrom and A. B. Leach & Co. was to receive all the profits of the transaction.

A. B. Leach & Co. became joint adventurers with the plaintiff in the enterprise, and A. B. Leach & Co. could not exclude the plaintiff from the enterprise for the purpose of securing the entire benefit of the profits to itself. A joint adventure is subject to the same rules as a technical partnership. Where the partnership has for its object the completion of a specified piece of work, or the effecting of a specified result, it will be presumed that the parties intended the relation to continue until the object has been accomplished. Until that time arrives one partner cannot terminate the partnership and continue the enterprise for his own benefit, nor can one partner exclude the other without his consent. It may be terminated at any time by consent, but the consent must be mutual.

(*Hardin* v. *Robinson*, 178 App. Div. 724, 729; affd., 223 N. Y. 651.) When A. B. Leach notified the plaintiff that he had elected to terminate the adventure, and that either party was free to go on with the enterprise, plaintiff protested and specifically and repeatedly notified A. B. Leach that he could not use the incident of the termination of the option to eliminate the plaintiff from the situation and proceed with the matter for his sole profit.

Leach first attempted to put the plaintiff in default by refusing to indorse the note for $100,000, and then demanding that plaintiff advance the $100,000, then notifying the plaintiff that he refused to exercise the option and significantly stating that either party could continue the matter; then Levering by representing that Leach was definitely out of the matter and that he must take up the matter with other parties which was impossible while the agreement with plaintiff was outstanding, obtained from plaintiff a release therefrom. We find Levering as soon as he could locate Leach resuming negotiations. Not content to await Leach's return to the city, Levering follows him to his golf club, on Sunday, and exhibits to him the release that he has induced the plaintiff to sign and then resumes the enterprise with the understanding that Leach alone should receive the profit.

It is a well-settled rule that copartners and joint adventurers owe the duty of utmost good faith to their copartners and coadventurers, and that until the copartnership is terminated or joint adventure is abandoned a copartner or joint adventurer cannot act for himself. If he does and thereby obtains for himself the benefits that otherwise would accrue to the partnership or joint adventurers, he will he held liable in equity to account to his copartner or coadventurers. (*May* v. *Hettrick Brothers Co.*, 181 App. Div. 3, 13; *Stem* v. *Warren*, 185 id. 823, 831.)

It is my opinion that A. B. Leach did not observe that good faith with the plaintiff that the law requires of coadventurers, and that with full knowledge of the conditions and with the sole design of excluding the plaintiff from participation in the profits of the enterprise, which the report of the engineer showed to be reasonably certain, he ostensibly withdrew from the enterprise, knowing full well not alone that without his

assistance the plaintiff could not carry out the contract of June 27, 1917, but also that in the limited time between the notification of his withdrawal and the day when large payments must be made upon the properties of the Island Oil and Transportation Corporation, Levering would be unable to arrange with others to finance the corporation; that his refusal to go on with the enterprise was for the purpose of eliminating plaintiff from participation in the profits and securing them for himself. The defendants should be required to account to the plaintiff for one-third of the profits of the transaction. Therefore, the judgment and the findings inconsistent with this opinion will be reversed, with costs to the appellant, and an interlocutory judgment entered requiring the defendants to account for one-third of the net profits received by them, or either or any of them, from the transactions set forth in the complaint, and appointing a referee to take such account and to report to the court at Special Term with his opinion. Order containing findings and interlocutory judgment to be settled on notice.

CLARKE, P. J., DOWLING, SMITH and PHILBIN, JJ., concurred.

Judgment reversed, with costs, and interlocutory judgment directed to be entered as stated in opinion. Order to be settled on notice.