JOHN M. ALEXANDER ET AL., APPELLEES, V. MELVIN C. TURNER ET AL., APPELLANTS.

297 N. W. 589

FILED APRIL 18, 1941. No. 31041.

*Beghtol, Foe & Rankin* and *Perry, Van Pelt & Marti*, for appellants.

*Tunison & Joyner, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ.

PAINE, J.

This is an action in equity for the dissolution of a joint adventure, created by a written agreement, and for the is-

suance of certain corporate shares of stock. Court found for plaintiffs. Defendants appeal.

It appears that the Fidelity Investment Company owns the Metropolitan Apartments in Lincoln, which is the only property that this corporation owns. Plaintiff John M. Alexander purchased and had transferred to defendant Melvin C. Turner 219 shares of common stock and 379 shares of preferred stock of the Fidelity Investment Company. This was done in accordance with a written agreement between the parties, dated September 30, 1935, consisting of two typewritten pages, which provides, in brief, that Alexander contemplates purchasing the above shares of stock from the owner, W. E. Sharp, and said Alexander will cause the said shares of stock to be assigned by Sharp to defendant Turner, who will take charge of and manage said Metropolitan Apartments for 5 per cent. of the gross receipts, and will pay out of the income the taxes, upkeep, and repairs, together with interest on the outstanding mortgage of $57,000 owned by the Woodmen Accident Insurance Company, which loan matures in 1940, bearing interest at 4 per cent.

It is stated in said agreement that the above shares of stock represent a majority of the stock in said corporation, and Turner reserves the right to purchase any of said outstanding stock for himself with all profits to be made thereon; that Alexander shall only be entitled to receive his share of the interest in the stock he has purchased of W. E. Sharp. But, by a written amendment of November 5, 1935, the parties changed this last provision in paragraph No. 5 to provide that the two parties would own all stocks that could be purchased in the Fidelity Investment Company in equal shares.

Paragraph No. 7 provided that "when, as, and if" Turner should sell or trade any of said stock, Alexander should receive 50 per cent. of the net profit. It was further agreed that, so long as said stock was held, all net dividends or profits should be divided equally between Alexander and Turner. It appears that Alexander purchased the shares

of stock from Sharp, according to their contract, and that Turner on October 2, 1935, deposited the certificate in escrow in the First National Bank, as provided in their agreement.

It is charged by plaintiffs that on December 21, 1938, Turner wrongfully and unlawfully sought to dispose of the shares of stock for his own use and benefit, and in violation of the rights of the plaintiffs, by executing an instrument assigning said stock to Paul H. Schroeder as trustee for the Fidelity Investment Company. By reason of this assignment, in violation of their contract, plaintiff Alexander asked to have the contract terminated, and to declare the partnership, or joint adventure, between the plaintiff and defendant dissolved, and that the Fidelity Investment Company be ordered to cancel and reissue said certificates of stock, issuing to plaintiff Alexander new certificates for one-half of the amount, to wit, 109½ shares of common stock and 189½ shares of preferred stock.

The First National Bank stated in its answer that it is ready and willing to deliver said certificates of stock in accordance with the escrow agreement, but is unable to determine whether or not the plaintiff or any other person is entitled to said shares of stock.

In the answer filed by Melvin C. Turner, Paul H. Schroeder, and the Fidelity Investment Company, it is admitted that Turner signed and delivered to Paul H. Schroeder the assignment of said shares of stock, as charged, but they insist that said assignment was made subject to all rights of plaintiff under the original contract for a joint adventure.

It is charged in defendants' answer that the plaintiff has been attempting to buy up outstanding stock in said corporation to gain control thereof, so that plaintiff can operate the same with sole benefit and profit, in violation of the rights of the other stockholders in said corporation. Defendants pray that the amended petition be dismissed.

The three defendants in their answer claim that this stock should be held as a unit, or block, to prevent either the plaintiff or the defendants from gaining absolute con-

trol of the corporation, but there appears to be no evidence offered by the defendants to support this contention, but it is clearly stated in the amendment which they made to the contract that the intention of the parties was that in the final settlement each party should have an equal share in the ownership of stock.

The trial court entered its decree, finding that the plaintiff was the owner of an undivided one-half of 219 shares of common stock and an undivided one-half of the 379 shares of preferred stock in the Fidelity Investment Company, free and clear of any interest therein, or lien thereon, in favor of the defendants, or any of them, and directing that the said certificates now on deposit in escrow with the First National Bank of Lincoln be delivered by said bank to the Fidelity Investment Company for cancelation, and that said Fidelity Investment Company shall reissue to the plaintiff, Alexander, certificates for one-half of the shares of stock, free and clear of any interest therein, or lien thereon, in favor of the defendant Paul H. Schroeder or the Fidelity Investment Company, and that the joint adventure contract, dated September 30, 1935, between the plaintiff Alexander and the defendant Turner be, and the same is hereby, dissolved.

In the motion for a new trial, it was stated that the findings of the court are contrary to the facts, are not sustained by sufficient evidence, and are contrary to law.

In construing this contract, it appears to be conceded that the relationship created is one known as joint adventures, in which two parties combine their property, money, efforts, skill, or knowledge in a common undertaking. *Wilson v. Maryland,* 152 Minn. 506, 189 N. W. 437.

A joint adventure has been defined as an enterprise undertaken by two or more persons to carry out a single business enterprise for profit. 30 Am. Jur. 677, sec. 3.

In general, a joint adventure is subject to the same rules as a partnership, although the two relationships are not identical, for a joint adventure always relates to a single transaction, although the business of conducting it to a termination may be continued for several years.

The defendants insist that "It is not the function of a court of equity to make a contract for the parties, or to supply any of the material stipulations thereof." *Mercer v. Payne & Sons Co.*, 115 Neb. 420, 213 N. W. 813. See 13 C. J. 524, 525.

Defendants also cite us to our holding that "In construing a paragraph of a contract which is in dispute, the court must endeavor to place itself in the position of the parties, and ascertain their intention, as well as the object and purpose to be accomplished by the doubtful provision, and interpret it in the light of the actual facts and circumstances surrounding them at the time it was made." *Lyman-Richey Sand & Gravel Co. v. State*, 123 Neb. 674, 243 N. W. 891.

The defendants insist that in a joint venture, if no date is fixed for its termination, the agreement shall remain in force until its purpose is accomplished, citing *Goss v. Lanin*, 170 Ia. 57, 152 N. W. 43; insisting that to set aside this contract would be unjust and inequitable, for the contract could only be terminated under its terms "when the stock could be sold in a lump sum."

The contract in this case was drawn by Alexander in his office, and doubtless did not contain all of the provisions that would have been inserted if it had been drawn by an attorney, for the contract does not fix any time for the termination thereof.

In a similar case, in the United States supreme court, in *Karrick v. Hannaman*, 168 U. S. 328, 18 S. Ct. 135, 42 L. Ed. 484, it was said: "It is universally conceded that a contract of partnership, containing no stipulation as to the time during which it shall continue in force, does not endure for the life of the partners, or of either of them, nor for any longer time than their mutual consent, but may be dissolved by either partner at his own will, at any time," and this statement of the law would control a case of joint adventure, and the same has been said by the Iowa supreme court in *Fitzhugh v. Thode*, 221 Ia. 533, 265 N. W. 893, where it was held that a contract for the purchase and sale

of realty containing no provision for its termination was terminable at will.

When two persons engage in a common enterprise, each has a right to demand and expect the utmost good faith in all that relates to their common interest, for they stand in a fiduciary relation to each other, and are bound by the same standards of good conduct and square dealing as are required between partners. Such joint adventure continues until the enterprise has been completely wound up and terminated. 33 C. J. 851.

The rights of the parties, with respect to the management and control, were fixed by the written agreement which they entered into on September 30, 1935.

If one of the parties has the property in his control, and is regarded as a trustee, he will not be permitted to enjoy any unfair advantage because of his possession of the property.

One party to a joint adventure may sue the other for a breach of the contract, and equity will order an accounting between the parties. 21 Standard Ency. of Procedure, 108; *Dorwart v. Ball,* 71 Neb. 173, 98 N. W. 652.

In this case the bill of exceptions consists of certain exhibits offered by the plaintiff, and the oral testimony of Alexander, the plaintiff. The defendants offered no oral evidence or exhibits.

"In the trial of a civil action, after the plaintiff has introduced evidence tending to prove his case, if the defendant fails to testify to matters peculiarly within his knowledge necessary to his defense, a presumption exists that his testimony, if produced, would militate against his interest, which presumption may be considered by the court or jury trying the case, in determining the facts proved." *Talich v. Marvel,* 115 Neb. 255, 212 N. W. 540.

In the construction of a contract, not only the express terms, but what is necessarily implied from those terms, should be considered. *Hamilton v. Wead,* 122 Neb. 854, 241 N. W. 556.

Plaintiff Alexander insists that this contract be dis-

solved. When Melvin C. Turner assigned all of the shares of stock which Alexander had purchased of Sharp and placed in Turner's name to Paul H. Schroeder as trustee, this was clearly a violation of the contract which Turner had with Alexander, and would be governed by the rule announced in *Clay v. Palmer*, 104 Neb. 476, 177 N. W. 840, that where a partner has, in violation of his duty, wrongfully disposed of property in which the partnership has an interest, or wrongfully surrenders partnership rights to third parties, a court of equity may dissolve the partnership and compel an accounting.

An examination of the evidence of John M. Alexander, being the only witness who testified in the case, and of the exhibits introduced by him, and an analysis of the several citations of law, brings the court to the conclusion that the trial judge was right in his decree, and we find nothing prejudicial therein to the rights of any of the defendants, and the decree is hereby

AFFIRMED.