WILL OF BODUS : BODUS and another, Appellants, vs. BRECKL, Respondent.

*March 8—April 12, 1949.*

For the appellants there was a brief by *Mathew Horwitz* and *John J. Devos,* both of Milwaukee, and oral argument by *Mr. Devos.*

*Howard A. Tilg,* attorney, and *W. H. Churchill* of counsel, both of Milwaukee, for the respondent.

HUGHES, J.   Three questions are submitted upon this appeal:

"1.  Did the testator on March 6, 1947, have sufficient mental capacity to exercise his right to dispose of his own property by will?

"2.  Was it prejudicial error for the trial court to admit into evidence the certified copy of the death certificate of Albert M. Bodus?

"3.  Was it prejudicial error for the trial court to deny to proponents the right to a redirect examination of the witness, Walter J. Nowicki?"

The will was executed March 6, 1947, and testator died April 22, 1947. He left an estate valued at approximately $40,000, consisting of a grocery and bakery and the building in which the businesses were operated, which building had apartments and offices on the second floor.

The testator's wife had died about four and one-half years before the time of his death. From the date of her death he lived with his daughter Irene Breckl, her husband, and child in one of the apartments in the building. Testator and his sons Edward and Frank operated the grocery and bakery. Frank lived in one of the other apartments with his two children, the three of them taking their meals with Mrs. Breckl.

The will divided the property as follows: Real estate, one fifth to the daughter and two fifths to each of the sons; the residue, equally between the sons.

It was admitted by all parties that the decedent had suffered a stroke several weeks prior to the date of execution of the will, resulting in impairment of use of his left leg and arm. Testimony as to the extent of the impairment was in sharp conflict. Overwhelming evidence was offered on the part of the objector showing that on the date of execution of the will the testator was without control over his physical and mental faculties. The daughter and two women, who aided her in the care of testator and who were disinterested witnesses, testified that the last rites of the Catholic church were administered to testator on the day of the execution of the will; that because of the paralysis the testator had to be propped up to prevent his sliding from a chair; and that he did not recognize people with whom he associated every day. Objector's witnesses also testified that his conduct, such as exposing himself in the presence of others, was such as to indicate lack of mental capacity. No purpose would be served by recital of details here.

There is ample evidence to sustain the finding of the trial court with respect to lack of mental capacity. This being true, there is no need to discuss the question of undue influence.

The evidence upon that subject presented a question for the trial court.

Appellants contend that it was error for the trial court to admit into evidence the certified copy of the death certificate which showed that the cause of death was cerebral hemorrhage.

We deem it unnecessary to consider whether this was error because other evidence in the case so strongly establishes the facts found by the trial court that it is inconceivable that any other result would have been reached if this evidence had been rejected.

"It is generally stated to be the rule in this state that, 'where a cause is tried by the court without a jury, the admission of incompetent evidence is not available as error on appeal unless some proposition essential to sustain the judgment has no evidence to support it other than such incompetent evidence.' *Hannah v. Knuth*, 161 Wis. 467, 154 N. W. 985." *Estate of Southard* (1932), 208 Wis. 150, 154, 242 N .W. 584.

With respect to the third question, it appears that Walter J. Nowicki had known the testator for forty years. He had drawn the will at the request of Edward, one of testator's sons. When the will was offered for probate he testified that on the day it was executed testator appeared as strong and well as he had ever seen him.

Mr. Nowicki had been brought to the home of the testator by Frank. After talking with the testator he prepared the will, using a typewriter which was in the home.

Nowicki then asked Mrs. Tellier, who was in the home taking care of the testator in the absence of Mrs. Breckl, to act as a witness. She refused. At the trial she testified that she refused because she was of the opinion that Albert Bodus was in no condition to make a will.

Thereupon Nowicki went down to the store and when he found no strangers there, proceeded down the block to a tavern where he found a kibitzer at a card game, who returned with him to the apartment and acted as the second attesting witness.

After the objector's evidence was in the proponents recalled Mr. Nowicki. The trial court, in the absence of objection by anyone, refused to hear further testimony. Appellants contend that this was error.

It may have been impatience on the part of the court. The record shows, however, that Nowicki's previous testimony upon the condition of the testator was so widely at variance with the admitted fact that he was partially paralyzed, that the trial court may well have concluded that whatever the witness might thereafter testify to would not be worthy of credence.

No offer was made by proponents of what they proposed to prove by recalling Mr. Nowicki as a witness. There appears in the record no prejudicial error in such rejection of further testimony by Mr. Nowicki.

*By the Court.*—Judgment affirmed.