CALVIN BARD, APPELLANT, V. OSCAR W. HANSON, APPELLEE.

68 N. W. 2d 134

Filed January 14, 1955. No. 33596.

McGinley, Lane, Powers & McGinley and Grenville P. North, for appellant.

Frost, Peasinger & Meyers, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit in equity for the dissolution of a partnership and for an accounting of partnership profits. The trial court found that no partnership existed, that

the parties were engaged in a joint adventure, that the purpose of the joint adventure failed, that no accounting was required, and that each had a one-half interest in the net profits, if any, of a certain tract of real estate, and ordered a judicial sale of the real estate on or after November 20, 1953, if a private sale was not consummated before that date. The plaintiff appeals.

The plaintiff, Calvin Bard, was a resident of Tulsa, Oklahoma. He had formerly lived in Omaha where he had been in the theatre and moving-picture business. He returned to Omaha for treatment of his eyes on May 11, 1951. During the period of his treatments he periodically visited "Film Row" to meet his old acquaintances. On one of these visits he met the defendant, Oscar Hanson, whom he had known for 40 years. Defendant had recently sold his film-booking business and it was suggested that the two join forces and attempt to make some money. The object was to make profits from the purchase, sale, resale, leasing, renting, and developing of business sites; such profits to be shared equally. They agreed that in their operations each would pay his own personal expenses except when defendant used his automobile, in which event the car expense was to be taken out of the first profits earned. Many trips were taken to points outside of Omaha in their efforts to make deals involving moving-picture theatres between August 15, 1951, and April 9, 1952, none of which materialized.

The evidence indicates that plaintiff had no money with which to operate, but that he was adept at promoting, buying, selling, and leasing property for persons connected with the film industry. It was his large experience in this field that he was to contribute to their joint efforts. The defendant had some property of his own and some financial ability to contribute to the enterprise. It is clear from the evidence that their activities were to be confined primarily to the film industry

where each had attained experience, although in different fields.

The city of Omaha was about to build a new city auditorium. Several film businesses were located within the area to be taken over by the city for auditorium purposes. The parties talked of buying or leasing properties which might be leased or sold to film industries thus compelled to change locations. The Paramount Film Distributing Company was one of the businesses with which the parties hoped to deal after preliminary negotiations had been had with that company.

The parties needed capital on which to operate. Defendant owned two-thirds of the stock of the Rialto Building Corporation in Beatrice. Plaintiff found a buyer for the Rialto Building Corporation out of which defendant realized $15,000. Plaintiff borrowed $5,000 from the other stockholder of that corporation.

They looked about for a site that was suitable for their purposes. They finally determined that Lot 4, Block 74, Original City of Omaha, was a desirable location. The owner also owned Lot 5 in the same block, and refused to sell unless both lots were purchased. They bought both lots for $65,000. The $15,000 which the defendant realized from the sale of his stock in the Rialto Corporation was used as the cash payment and a mortgage for $50,000 was given back to the owner. The title was taken in defendant's name and defendant and his wife executed the mortgage.

The parties failed to consummate their deal with Paramount Film Distributing Company. They had the lots with no immediate deals in prospect. The defendant began operating a parking lot on the two lots, the proceeds of which he indicated were to be applied to the payment of interest on the $50,000 mortgage. Plaintiff was attempting to effect a sale or development of the property. Defendant sent prospects to plaintiff during this period. Plaintiff contacted about 20 concerns, most

of which but not all were associated with the film industry.

The World Publishing Company became interested in one of the lots. Plaintiff negotiated a sale of one lot for $47,500. This was applied on the $50,000 mortgage. Defendant raised an additional $2,500 which was used to pay off the remainder of the mortgage, plaintiff having obtained a discount from the mortgagee in the amount of the accrued interest.

The parties discussed the lease of the remaining lot for parking purposes. Plaintiff secured a lessee who was to pay $2,500 per year in advance, with the provision that the lease could be cancelled upon 30 days' notice if the lot was sold or if a building was to be erected upon it. The first year's rental was used to pay the $2,500 which defendant had raised to pay off the mortgage on the lots over and above the $47,500.

Plaintiff became short of money and defendant advanced him $150 at this time. Plaintiff also desired to form a corporation to hold title to the property in which each would own 50 percent of the stock and the corporation would give defendant evidence of indebtedness in the amount of $15,000 which he had invested. Defendant procrastinated because of the expense of incorporating. Plaintiff then demanded an accounting of the parking lot operations. Defendant furnished an accounting which was not satisfactory to plaintiff. Defendant then demanded 51 percent of the stock if a corporation be formed, although plaintiff was to have one-half of the profits. Plaintiff declined to incorporate on this basis. A subsequent oral agreement to incorporate is alleged to have been made, and defendant again procrastinated by insisting on consulting his auditor on the "tax angle." The corporation was never formed. Defendant claimed to be the sole owner of the lot, and this suit was brought.

It is the contention of the plaintiff that a partnership existed between himself and the defendant. A partner-

ship is a contract by two or more competent persons to place their money, effects, labor, or skill, or some of them, in a lawful trade or business, and to divide the profit and bear the loss in certain proportions. Baum v. McBride, 143 Neb. 629, 10 N. W. 2d 477. A joint adventure is in the nature of a partnership. To constitute a joint adventure there must be an agreement to enter into an undertaking in the objects and purposes of which the parties have a common interest, and each of the parties must have equal voice in the manner of its performance and control over the agencies used therein, though one party may entrust performance to another. Soulek v. City of Omaha, 140 Neb. 151, 299 N. W. 368. A joint adventure is usually defined as an enterprise undertaken by two or more persons to carry out a single business transaction for profit. Alexander v. Turner, 139 Neb. 364, 297 N. W. 589. The principal distinction between a partnership and a joint adventure is that the latter usually relates to a single transaction. Soulek v. City of Omaha, *supra.*

We think that the parties intended to create a partnership. The sharing of the profits was agreed upon and the sharing of expenses and losses was contemplated. The operations of the parties was to cover any and all opportunities to make money, although they contemplated dealing with businesses associated with the film industry because that is where the parties had had experience. The parties were joint principals. The partnership was for their mutual benefit in the pursuit of which each had an equal voice in the manner of its performance. The purpose of the enterprise was not to consummate a single transaction but was to complete any or all deals which presented themselves upon which they could make a profit. The description of their operations, hereinbefore set forth, indicates by its scope that a partnership rather than a joint adventure was created. The scope of a partnership may be evidenced by written or oral agreement, or implied from the conduct of

the parties and what was done by them. Smith v. Smith, 179 Iowa 1365, 160 N. W. 756; 68 C. J. S., Partnership, § 78, p. 518. The question is not a controlling one in the present case for the reason that the same rules apply whether or not it be a partnership or joint adventure. Alexander v. Turner, *supra.*

The plaintiff contends that the agreement, which was made in 1951, had been in existence continuously for more than 18 months; that both spent their time in attempting to buy suitable property for development, sale, or lease; and that the purchase of the lots here involved, the operation of the parking lot, the sale of one lot, and the lease of the remaining lot, all fell within the framework of the agreement made by the parties. The defendant, on the other hand, asserts that the objects and purposes of the oral agreement were limited only to the making of profits from the development of property for sale or lease to persons or businesses associated with the film industry, and that such negotiations having failed with this restricted class of businesses, there was no profit to share under the limited agreement made.

The evidence of the two principals to the agreement is very conflicting. We are convinced, however, that the conduct and actions of the two parties speak louder, and are entitled to more credence, than their words.

It is clear from the record that the defendant knew the plaintiff had no money to invest in the partnership when the agreement was made. Defendant knew that plaintiff was adept in dealing in theatres and business places associated with the film industry. Plaintiff sold the Rialto Theatre at Beatrice for the defendant and the other stockholder. The evidence indicates that this was done not to gain a commission from the sale for the plaintiff but to secure cash to further the partnership interest. They made numerous automobile trips outside of Omaha in an attempt to make deals to their advantage. The mileage costs were paid by defendant but charged to the partnership business, pursuant to the agreement. The

two lots in question were purchased for the purpose of erecting a building thereon for sale or lease to Paramount Film Distributing Company. The plaintiff spent much time trying to make this deal with the Paramount Film Distributing Company without success. The evidence is clear that the two lots were purchased as a part of the business and the purchase was within the terms of the agreement creating that relationship as each understood it to be. The defendant contends, however, that when the parties failed to find a purchaser associated with the film industry, particularly with the Paramount Film Distributing Company, but found a purchaser not so associated, the transaction ceased to be a part of the partnership under the limiting words of the partnership agreement.

We point out that the parties had contemplated incorporating their enterprise and that the title to the two lots was taken in the name of the defendant as a matter of convenience only. After the contemplated deal with the Paramount Film Distributing Company had failed to materialize, defendant continued to send prospective purchasers to the plaintiff whether or not they were associated with the film industry. In fact, the World Publishing Company, the eventual purchaser of one of the lots, was directed by the defendant to negotiate with the plaintiff for the lot. Before the sale of the one lot defendant operated a parking lot thereon while plaintiff tried to make a deal to sell or lease the two lots. Defendant stated that the income from the lots would be applied upon the interest on the $50,000 mortgage. After the sale of the one lot he continued to operate a parking lot on the other until it was leased for $2,500 per year. Plaintiff demanded an accounting of the earnings of the parking lot. Defendant purported to account in writing, the written account appearing in the record. This account credited the defendant with $146.75 mileage expense incurred during the period the parties were working together. It had been agreed that such ex-

pense should be paid from the first money earned in any deal they made. The expenses of placing the lots in condition for use as a parking lot were credited to the defendant. The daily income from the lot was set forth. Credits were taken for interest on the $15,000 and the $2,500 advanced by the defendant. This accounting was made even though defendant was not obliged to account at all if the defendant's version of the agreement was the correct one. The subsequent lease of the lot for an annual rental of $2,500 was negotiated by the plaintiff. The terms of the lease were such that it could be terminated in the event of a bona fide sale of the lot, or if a building was to be erected thereon. In other words, the lease provisions left the way open for a deal within defendant's version of the agreement.

The evidence sustains the position of the plaintiff. The conduct and actions of the defendant were consistent with plaintiff's contentions and inconsistent with the position he now assumes. If there is any question about the understanding of the parties in making the agreement, the defendant has resolved it by his own actions and conduct. He is in no position to defeat the rights of the plaintiff because he holds legal title to the remaining lot as a matter of convenience. Baum v. McBride, 152 Neb. 152, 40 N. W. 2d 649. His attempt to put the strict and limited meaning on the partnership agreement is directly contrary to the interpretation he put upon it when gauged by his own conduct under it.

The evidence of the defendant was not direct and positive. In many of his answers he stated that he would have to give thought, study, and consideration as to the exact meaning of the agreement he made with the plaintiff. The evasiveness of some of his answers and the nebulous character of his claimed rights are in direct conflict with the interpretation he placed upon the agreement by his own conduct before the potential profit in the remaining lot manifested itself. We necessarily find for the plaintiff on the evidence in the record.

We find that defendant holds the title to Lot 4, Block 74, Original City of Omaha, for and on behalf of the partnership. We further find that the income from the parking lot operations belongs to the partnership. We also find that plaintiff is entitled to a dissolution of the partnership and to an accounting of all the profits of the partnership. The decree of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.