295 P.2d 834

Marinus JOHNSON and Arlin Davidson, Plaintiffs and Respondents,

v.

Joseph KOYLE, Duke Page, and John Doe Syrett, Defendants,

Duke Page, Defendant and Appellant.

No. 8404.

Supreme Court of Utah.

April 11, 1956.

Paul J. Merrill, Spanish Fork, Jackson B. Howard, Provo, for appellant.

Clyde & Mecham, R. C. Gibson, J. L. Barker, Jr., Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

This action was commenced by a complaint alleging a contract between plaintiff Johnson and defendant Page for the acquisition of land and development of an irrigation project to serve it; further alleging certain breaches of the contract by the defendant; and praying a termination of the agreement and distribution of real property and money held by the defendant. The lower court found that the contract initiated a joint adventure and that by his conduct defendant had abandoned the ad-

venture and held that by reason of the abandonment, defendant was entitled only to the expenditures which he had made and decreed that upon payment of these certain items by plaintiff, plaintiff was entitled to all the property thus jointly acquired.

In 1940, Johnson was the owner of a water filing and likewise held a contract to purchase from one Pratt 440 acres of land on which the water when appropriated would be put to beneficial use. Pratt, at that time, was homesteading the acreage and promised a conveyance upon his acquisition of the title. Having no funds for the development of the water appropriation, plaintiff Johnson entered into a written agreement with defendant Page providing generally:

1. That Johnson would convey a one-half interest in the water filing and levees and canals already constructed.

2. That Page would provide supplies, equipment, and labor necessary to complete the levees and canals.

3. That Page would furnish the costs required to complete the appropriation of the water and put it to beneficial use.

4. That each party was to pay one-half the purchase price of land to be acquired in the future, and each was to have one-half interest in property so acquired.

5. That if Johnson was unable to pay his share of the purchase price, Page was to advance all of the money to purchase land. The money so advanced for Johnson was to be repaid from profits and Page was to have a lien against Johnson's share for this amount.

During that summer, Page sent men and equipment to the location of the canals and some work was done on the project but it was not completed. Some abortive attempts were made to acquire various selections of land in the area.

Thereafter, Pratt died without having received title to the 440 acres which he contemplated selling to Johnson. Page and Johnson then aided Pratt's widow in perfecting the homestead by moving a house and other buildings onto the property. She received a patent to the 440 acres and conveyed the land to Page for a consideration of $440 in 1943.

After receiving the land, Page stated to Johnson that he intended to go no further with the project unless Johnson would immediately reimburse him one-half the expenditures.

In 1944, Page conveyed 40 acres of the tract for a price of $350 and deposited the money in a joint account for himself and Johnson. Johnson, at that time, wrote a letter to Page through an attorney asserting his rights to one-half interest in all the property and money, and later quitclaimed his interest in the 40 acres to the purchaser.

Page, who held title in his own name to one-half interest in the water filing and a power of attorney from Johnson as to the other half, paid the fees necessary to keep the application alive until he permitted it to lapse in 1949.

Likewise, Page paid the taxes assessed against the property to the present date with the exception of one year.

After hearing the above evidence of a number of breaches of the contract by Page, the trial court held:

"That by reason of Page's failure to furnish men and equipment for completing the levee and canal as agreed by him and his failure to pay necessary fees and costs to complete the appropriation of water referred to in said agreement and by reason of his failure to make any offer or tender herein to complete such work or to reinstate or recover such water filing he should be considered to have abandoned his right to continue as a joint adventurer in respect to the property and project herein involved."

Under this finding of abandonment, the court decreed that the dissolution of the joint venture should be declared and further that the plaintiff Johnson is owner of the land herein involved as against the defendant Page, subject only to the right of Page to recover one-half of the taxes paid by him, plus the $440 paid for the land and $78.10 expenses in acquiring title, with six per cent interest running from May 7, 1943, the date of acquisition of title.

Although the pleadings of the case are confusing, its true nature appears to be an equitable action for dissolution and accounting. The basis of the action is the contract creating a joint adventure, of course, but the action is not one for damages for the breach of contract which would have been barred by the six-year statute of limitations. We agree with the trial court that the various breaches by Page and the obvious inability of the parties to work peaceably together on this project create sufficient reason for a court of equity to dissolve the relationship. Alexander v. Turner, 139 Neb. 364, 297 N.W. 589.

However, respondent (Johnson) also justifies the award, granting all the property to him and awarding out-of-pocket expenses only to Page, upon Page's abandonment. He cites to us cases which generally hold that where one party to a joint adventure refuses to perform or contribute his share, the other members may continue the enterprise and are not accountable to him for any profits accruing thereafter. We cannot quarrel with such a universal and equitable principle, but it does not make true its converse, i. e., that an abandoning partner remains liable to the firm for profits achieved through his individual pursuits thereafter. In the cases cited by respondent, the party who continued the project was permitted to exclude the one who became inactive; in the present case, it was Page who breached the contract and refused to perform certain obligations but it was also Page who remained active in

acquiring the property and selling a portion of it. Either Page effectively abandoned the enterprise at some time between its inception in 1941 and the date of a final breach in 1949, giving Johnson the right to terminate the agreement and act only in his individual interests but likewise freeing Page of future obligations, or the relationship continued until dissolved by this court action and the parties should share the assets as contemplated in the agreement. We need not determine whether Johnson's claim would be barred by laches if the former situation prevailed, for it is our view and our interpretation of the trial court's decree that the arrangement was not terminated until after the trial of this case.

The trial court found

"That no agreement has been made at any time between Johnson and Page for termination and recission of the written agreement entered into by them * * *."

Further the trial court decreed a dissolution, an unnecessary act if it concluded that the agreement was terminated by abandonment.

 It has been held that if no date is fixed by the contract for the termination of the adventure, the agreement is in force until the purpose is accomplished, and neither party can, without just cause, terminate the adventure until that time. Brown v. Leach, 189 App.Div. 158, 178 N.Y.S. 319; Hannah v. Knuth, 161 Wis. 467, 154 N.W. 985, Ann.Cas.1917C, 681; Goss v. Lanin, 170 Iowa 57, 152 N.W. 43; 48 C.J.S., Joint Adventures, § 4. This statement of the law appears to be somewhat broad, for the association should be considered terminated when its purpose appears to be impracticable, Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co., 10 Cir., 209 F.2d 917, where conduct of the parties is inconsistent with the continuance of the relationship, Middleton v. Newport, 6 Cal.2d 57, 56 P.2d 508, and perhaps where there is inactivity of the association over a long period of time when activity was contemplated and feasible, Karrick v. Hannaman, 168 U.S. 328, 18 S. Ct. 135, 42 L.Ed. 484. However, even cases which hold that a joint adventure such as this is terminable at will, assert that equity will not permit the abandoning member to deprive his associates of their share of whatever he acquired as a result of the joint enterprise, Lind v. Webber, 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L.R.A.,N.S., 1046, Ann.Cas.1916A, 1202. The fiduciary nature of the relationship requires complete disclosure, fairness, and honesty, Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1.

 Even though the contract was breached in several instances by Page, there is nothing in the record to indicate that he intended to withdraw from the entire enterprise; there is nothing to indicate that Johnson was on notice that Page claimed

as his own the consideration which Johnson offered the project. Even after Page had dealt with the property in his own name and demanded payment of half of his expenditures from Johnson, he placed the proceeds from the sale of part of the property in a joint bank account for himself and Johnson.

In selling that tract of the property, Page either sought a quit-claim of Johnson's interest for his buyer or indicated to the buyer that Johnson had such an interest. Johnson gave the quit-claim deed apparently in order that the joint enterprise might continue and profit. There is no conduct on the part of either men incompatible with the continued existence of the joint adventure.

Although the property was acquired in a different manner than that evidently contemplated by the parties at the time they entered the agreement, it is the particular piece of property which they intended to acquire by one means or another. Page became acquainted with the land, with its possibilities as a profitable venture, through Johnson. Johnson has now procured a buyer for the remainder of the property, and that buyer was in part induced to purchase because of the availability of water through the channels which Page and Johnson jointly built. Under these circumstances, Page cannot now use his own breaches of contract to justify an appropriation of Johnson's rights in the contract. Lind v. Webber, supra.

■ It is fundamental that until a joint adventure has terminated, or the enterprise has been abandoned, the joint adventurer cannot exclude his associates from interest in the property by purchasing it for his individual account, nor can he acquire an interest therein antagonistic to the interest he acquires for his associates, and if he does so purchase or acquire property in breach of his duty, he must account therefor to his joint adventurer. Kincaid v. Miller, 129 Colo. 552, 272 P.2d 276. The division of the property of the joint adventure must follow the contract upon termination of the adventure.

■ Therefore, Page and Johnson each own one-half interest in the property. Page is to be reimbursed one-half of all his expenditures in acquiring and preserving the property, which would include the cost of buying and moving the house upon the land to complete the patent to Mrs. Pratt, taxes and filing fees. Since the joint adventure continued until terminated by the trial court's decree, Page is not entitled to interest upon his various investments in derogation of the contract, which provides for such advances.

Reversed and remanded for findings and conclusions not inconsistent with this opinion. Costs to appellant.

CROCKETT, WADE, and WORTHEN, JJ., concur.

HENRIOD, J., concurs in the result.