WILSON T. ADAMS, APPELLEE, v. J. STERLING ADAMS,
APPELLANT.

57 N. W. 2d 131

Filed February 13, 1953.   No. 33192.

*Baskins & Baskins,* for appellant.

*Beatty, Clarke, Murphy & Morgan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity by Wilson T. Adams, plaintiff and appellee, against J. Sterling Adams, defendant and appellant, the purpose of which is to have dissolved a partnership entered into by and between the parties under a written partnership agreement dated July 14, 1947, to have the respective interests of the parties declared, for an accounting, and for a distribution of the assets of the partnership.

The cause was tried to the court and a decree entered. The decree contains numerous findings. From the decree in its relation to certain of the findings the defendant has appealed. From the decree in its relation to other findings the plaintiff has cross-appealed.

Neither of the parties appears to oppose the dissolution of the partnership. The real controversy relates to the accounting and declaration of interests therein.

The background of the action is that prior to July 14,

1947, the defendant was the sole owner of an undertaking business and establishment in North Platte, Nebraska, known as Adams Funeral Home. On July 14, 1947, plaintiff and defendant entered into a written agreement whereby the two became partners in the business. The agreement is of considerable length and for that reason important essentials only thereof will be set out and referred to herein. The agreement fixed the value of the merchandise, personal property, and good will at $30,000. No real estate was involved although the business was conducted in and upon property of the defendant. The acquirable interest of the plaintiff was one-third. Plaintiff in the beginning made no contribution of the capital assets. The agreed cost of acquisition was $10,000.

The general plan for acquisition of plaintiff's interest was that he should apply his share of the profits of the business upon the purchase price. Specifically it is provided that he had the option of paying by cash or at the rate of $20 per funeral conducted with exceptions as to certain types of funerals. The amount of $20 per funeral the parties have treated as agreed compensation which the plaintiff was to receive from the partnership for his work in addition to salary. The period for the computation of payments and the determination of plaintiff's interest appears to be the fiscal year from October 1 to September 30. If at the end of the fiscal year plaintiff had drawn only his salary, the aggregate of $20 for each funeral conducted during the year was to be credited upon the $10,000 and the amount so credited represented his interest in the partnership. This amount then became payable to the defendant. If plaintiff drew more than his salary then the excess was to be deducted from the aggregate for funerals and the difference credited upon the $10,000. This lesser amount then represented his acquired interest and the amount to which the defendant became entitled. The plaintiff was then entitled to participate in the profits in the proportion that

this amount bore to the entire worth of the business.

It is evident from the evidence of the conduct of the parties that by "entire worth of said business" they meant as of the date of the contract which was $30,000.

The agreement by its terms contemplated that plaintiff should receive a salary from the partnership. No amount however is specified. By agreement, and concerning this there is no dispute, he drew a salary of $200 a month from the beginning of the partnership to and including February 1949. Thereafter he drew $250 a month which he says was also his agreed salary. The defendant on the other hand says that there was no agreement as to the increase of $50 a month but that these amounts should be charged back against the aggregate of the $20 per funeral which he was entitled to receive.

The agreement did not by its terms contemplate a salary for the defendant. No salary was set up in the current operating records in favor of the defendant and there is no record that he withdrew any salary as such. Herein he contends that it was orally agreed that he was to have a salary of $400 a month. In this accounting he claims an indebtedness to him from the partnership of $400 a month for salary. Plaintiff denies the oral agreement and the indebtedness.

The agreement made no provision for rental for the property owned by the defendant and occupied by the partnership. An item of $1,800 a year was carried as a part of the current operating expense. It however was not received by defendant as such from the partnership. The defendant says that this was agreed upon. The plaintiff denies that it was agreed upon and urges that defendant is not entitled to receive it.

As to the salary the finding of the trial court was that the evidence failed to establish that at any time the salary of plaintiff was increased over $200 a month. It was further found that the right to a salary by defendant was not established at all. Also it was found that the

defendant was entitled to receive $150 a month from the partnership for rental of the premises occupied.

As to the question of salary for the defendant and of rent for the premises we conclude that the finding and decree of the district court is correct and should be sustained. As to the salary of plaintiff we think that the evidence sustains the contention that it was increased to $250 a month from March 1949. Both parties agree that up to a certain time the plaintiff repeatedly complained about the amount of his salary. Then at the given time plaintiff says that the increase was agreed upon and that thereafter he drew semi-monthly checks for his salary in the increased amount which were signed in each instance by the defendant without protest. Whether or not there was a notation on the checks or any of them that they were for salary does not appear. The checks are not in evidence. There is an exhibit in evidence showing the withdrawals of the plaintiff from the partnership. These withdrawals are not uniform in amount but from March 1949 a large percentage of them are in the amount of $125 each. The evidence in this respect is far from conclusive but it together with the reasonable inferences to be drawn therefrom appears to preponderate in favor of plaintiff.

The further steps in the accounting herein, if in truth on the record made an accounting may be had, depend largely upon analysis and application of substantially noncontroverted but highly inconclusive facts, under appropriate legal principles, to the controlling provisions of the partnership agreement.

The period involved for the purposes of accounting extends from July 14, 1947, to January 31, 1951. Early in February 1951, the plaintiff withdrew from the partnership and there appears no disagreement on the proposition that his rights in the partnership are to be ascertained with relation to the conduct of the partnership and its condition as of January 31, 1951.

The district court found and the record sustains a find-

ing that up to and including September 30, 1949, the plaintiff had paid and was entitled to have credited on his purchase of interest in the partnership the sum of $3,492.40. Some question was raised about this on the trial but the plaintiff accepts it as correct and a written acknowledgment of it by the defendant appears in the bill of exceptions. The record does not disclose whether or not this amount was ever withdrawn from the partnership as payment by plaintiff to defendant. Incidentally, and of course, if it remains among the funds and assets of the partnership, the defendant has the right of withdrawal and for accounting purposes it may not be regarded as a part of the assets of the partnership.

Just how this amount was arrived at does not authentically appear. This item, as is true of all items ultimately arrived at in the accounting by the district court and which are, if possible, to be ultimately arrived at here, has been and must be arrived at on the basis of an analysis of exhibits prepared by an accountant from data presented to him by the defendant, the partnership agreement, certain oral evidence as to value of physical property, the matter of salaries of plaintiff and defendant, and the matter of rent for the premises occupied by the partnership. None of the data which was used by the accountant in his preparation of exhibits was presented to the court for consideration.

Some of the exhibits are duplicated in the bill of exceptions and where that appears, for the purpose of discussion, only one will be referred to.

Exhibit 5 is an operating statement for the year ending September 30, 1947, and a balance sheet covering the same period. The operating statement shows a gross income of $30,137.71 and a net profit for the period of $7,250.62. The balance sheet for the period shows a net worth of the capital assets of $17,531.24.

Exhibit 6 is an operating statement for the year ending September 30, 1948, and a balance sheet covering the same period. The two show a gross income of

$31,011.93, a net profit of $11,971.31, and a net worth of capital assets of $19,137.16.

Exhibit 3 is an operating statement and balance sheet for the year ending September 30, 1949. These show a gross income of $51,590.67, a net profit of $25,126.89, and a net worth of capital assets of $30,760.05.

Exhibit 11 is an operating statement and balance sheet for the year ending September 30, 1950. These show a gross income of $51,884.13, a net profit of $20,728.09, and a net worth of capital assets of $30,456.57.

Exhibit 12 is an operating statement and balance sheet for the period beginning October 1, 1950, and ending January 31, 1951. These show a gross income for the period of $14,497.23, a net profit of $5,311.69, and a net worth of capital assets of $32,134.74.

Exhibits 13 and 14 purport to be a computation by the accountant of plaintiff's share of the profits in the partnership from January 1, 1946, to January 31, 1951, and his interest as of January 31, 1951. These are of little, if any, value for that purpose for the reasons, among others, that the computation covers the period beginning January 1, 1946, whereas the contract period begins July 14, 1947, and it totally disregards and discards the conclusion that as of September 30, 1949, plaintiff had a credit upon his purchase of the one-third interest of $3,492.40.

Exhibit 7 is a statement of withdrawals from the partnership made by the plaintiff from October 1, 1946, to and including February 1, 1951. This includes salary and other items. On the face of the exhibit some of the items appear to be estimates but the accuracy as to totals does not appear to be challenged.

Exhibit 18 is a statement of withdrawals from the partnership by the defendant from October 1, 1946, to and including September 30, 1949.

Exhibits 15 and 16 are a statement of withdrawals by the defendant from October 1, 1949, to and including January 31, 1951.

Exhibit 17 is what has been denominated "Depreciation Schedule." The value of the items named in this schedule as of January 31, 1951, is in dispute.

As we view the case none of these exhibits is of concern in determining the interest of the plaintiff in the partnership prior to and including September 30, 1949. As has already been held herein, by an apparently mutual determination his credits on his purchase price amounted to $3,492.40, and this represented his interest as of that date. On that date his interest was 11.64 percent.

For the period from this date forward no evidence was adduced or offered by either party upon which to base a determination of the interests of the partners in the partnership or an accounting thereon.

The books and records of the partnership are not now and have never been before the court. There are no exhibits in the record having authenticity as regards the partnership except the partnership agreement itself and the exhibit indicating the interest of plaintiff as of September 30, 1949. The other exhibits described are in the record, it is true, but it cannot be said that they contain information basically necessary either for the determination of the interests of the partners in the partnership or a determination of either the tangible or intangible valuation thereof.

The plaintiff does not admit that the exhibits correctly or authentically reflect the true condition of the partnership, and they on their face demonstrate that they do not. One demonstration among others is that the salary and other compensation of plaintiff is treated as a profit of the partnership whereas it is properly an item of expense.

These exhibits, as has been pointed out, were made up by an accountant, not from an analysis of books and records of the partnership, but from some type of information furnished him by the defendant, with two exceptions. The true source of the information is not

disclosed and neither is its authenticity vouched for. The exceptions are the exhibits containing the statement of withdrawals by the partners from the partnership. Even these were not made up from any source of original entry but from a check register.

From what appears as to the period ending September 1949 and these exhibits the district court was and this court is asked to determine the relative interests of the partners under the partnership agreement as of January 31, 1951; the financial status of the partnership as of January 31, 1951, embracing the amount which defendant was entitled to withdraw up to that time, the value of the capital assets, and the liabilities also as of that time; and the good will. Compliance is not possible. The record leaves all matters of accounting except as noted in the realm of conjecture, speculation, and guess.

It may well be said that the determination of intangible or good will value cannot under any circumstances be entirely taken out of the field of speculation but this certainly is not true of the other values of a partnership which must be considered in order to reasonably arrive at the intangible value. The other values are the tangible and they depend upon production and exposition of pertinent and ascertainable facts and arithmetical computations. Such facts are not present in this record.

There is no known invariable rule for the ascertainment of intangible or good will value. 38 C. J. S., Good Will, § 6, p. 953. There are however certain factors which must be regarded in order to arrive at a valuation. 38 C. J. S., Good Will, § 6, p. 953; 68 C. J. S., Partnership, § 396, p. 910. There is an absence of evidence as to all pertinent factors.

As indicated there has been no substantial effort to separate the tangible from the intangible value. There is an absence of evidence of reasonable rate of income based on investment in assets. There is an absence of evidence of properly anticipated profit on merchandise and merchandise turn-over. There is an absence of evi-

dence of properly anticipated profit on the personal services of the partners. In short there is an absence of all such evidence as would lead to a conclusion as to what ought to be regarded as a reasonable rate of income of an undertaking business of this size and character in this location based upon service contribution of the partners, the invested capital, and the merchandise turnover. These are some factors pertinent in the ascertainment of intangible or good will value.

On this phase of the case we can conclude only that the decree must be reversed and the cause remanded to the district court for further proceedings.

From a part of the decree, as pointed out, the plaintiff took a cross-appeal. The cross-appeal as it is viewed here does not have the effect of in anywise altering the conclusion that the decree must be reversed and the cause remanded to the district court for further proceedings.

The cross-appeal is based upon a contention that at a given time the plaintiff made a tender of the balance of the purchase price of the one-third interest and that from that date he must be regarded as the owner of the full one-third interest and that accounting should be made accordingly. The contention is without merit.

We do not think the evidence sustains a sufficient tender on his part. The record discloses offers on his part to make payment at different times in cash. It does not show an immediate and then present ability to pay. In order to perform it would have been necessary thereafter to make arrangements and to obtain a loan. He could not have immediately performed if his offer or offers had been accepted. The only evidence that he could have obtained a loan is his own oral statement on the trial to that effect and the testimony of his father-in-law that he was willing and able to make the loan. An offer is a tender only if it is coupled with a present ability to act. Linch v. Nebraska Buick Automobile Co., 120 Neb. 819, 235 N. W. 456; Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315.

A formal tender is not waived by an indication of refusal in the absence of ability on the part of the party making the tender to perform at the time and make his tender good. Baird v. Union Mutual Life Ins. Co., 103 Neb. 609, 173 N. W. 686, on rehearing, 104 Neb. 352, 177 N. W. 156.

Plaintiff, not having at the time the ability to perform, cannot claim the benefit of the rule stated in Garbark v. Newman, *supra,* as follows: "However, the law does not require vain things, and a formal tender of property is not required if it appears that if made it would have been futile." This rule does not relieve against the necessity for the existence of present ability on the part of the offerer to perform.

On the issues herein involved it is concluded that the agreed salary of plaintiff was $200 a month from the formation of the partnership to and including February 1949; that thereafter until January 31, 1951, it was $250 a month; that no salary for defendant was ever agreed upon and he was entitled to none; that the defendant is entitled to $150 a month as rent for the premises occupied by the partnership from the date of the contract to January 31, 1951; that the plaintiff had paid $3,492.40 on his purchase price of his interest on September 30, 1949, and at that time he became the owner of 11.64 percent interest in the partnership; that the record contains no basis for an accounting or declaration of the interests of the partners for the period after September 30, 1949, and the cause should be remanded for accounting in this respect; and that the cross-appeal of plaintiff is without merit.

The decree of the district court is reversed and the cause remanded for further proceedings in accord with this opinion.

REVERSED AND REMANDED.