ALBERT P. HAUKE, APPELLANT, V. JOHN H. FREY, APPELLEE.

93 N. W. 2d 183

Filed November 28, 1958.   No. 34410.

*Lyman & Holscher*, for appellant.

*Wright, Simmons & Harris,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity instituted by Albert P. Hauke, plaintiff and appellant, against John H. Frey, defendant and appellee, the purpose of which was to enjoin the defendant from taking possession of assets of a business known as Bowl Arena in Scotts Bluff County, Nebraska, claimed to be owned exclusively by the plaintiff; from in any manner interfering with the operation and management of this business; from going upon the premises; from making any charges which would become an obligation against plaintiff as the owner and operator of the business; and for an accounting.

The case was tried to the court, injunction was denied, and the petition was dismissed.   From the judgment the plaintiff has appealed.

The pleadings in the case were voluminous but the matters finally submitted for consideration became determinable upon the question of whether or not the plaintiff was the sole owner of the business above named. By his petition the plaintiff declared that he was the owner of certain lots in Terry's Addition in Scotts Bluff County, Nebraska, on which he had constructed a building which was completed about August 31, 1956; that in the building is a business which he owns and operates known as Bowl Arena; that from August 31, 1956, to March 17, 1957, the defendant was the agent in management of the business for the plaintiff at a salary of $425 a month; that for the purposes of operating the business and prior to the commencement thereof he purchased bowling alleys, bowling equipment, and miscellaneous equipment to be used in the business; and that on March 18, 1957, he discharged the defendant as manager of the business. Reasons for discharge are set forth in the petition but it is not deemed necessary to set them forth here since the defendant does not contend that they were insufficient if the plaintiff was sole owner of the business. This is a brief summary of the allegations of the petition which are pertinent to the determinable issues.

The answer to the petition is a general denial. The substantial position of the defendant however, as disclosed on the trial and by the briefs in this court, is that the plaintiff was not the sole owner of the business but that he and the defendant were partners.

One witness was called to testify in the case. That witness was the plaintiff. He testified substantially, as alleged in the petition, that he was the owner of the real estate referred to; that he had constructed the building thereon in which was operated the business known as Bowl Arena; that the business was managed by the defendant under an arrangement whereby he was to receive out of the revenue of the business $425 a month for his service as manager; that plaintiff was to

receive for the use of the premises to be paid out of revenue $500 a month; that the business started on August 31, 1956; that the defendant was dismissed as manager by notice given by plaintiff on March 18, 1957; and in general that he was the sole owner of the business.

Specifically on the question of whether or not the defendant was a partner he testified on direct examination that before the business started equipment and merchandise were bought by plaintiff and defendant; that the bank account was a partnership account and checks required the signatures of both of them; and that all business was conducted on a nominal partnership basis. He never on his direct examination attempted to clearly define the relationship of plaintiff and defendant to the business. He gave testimony the effect of which was to say that from the beginning there were discussions concerning and proposals for the organization of a corporation but in this respect nothing was accomplished.

On cross-examination, however, by his testimony, he made it clear, contrary to his pleaded cause of action, that he did not regard himself as sole owner of the business and the defendant as only an employee. He made it clear that it was a business in which the two were interested and engaged and that this was the intention of the parties from the beginning. Questions and answers in the bill of exceptions, as follows, make this clear: "Q Well, anyhow, at that time you knew you were going to go into business together? A Yes. Q If arrangements could be worked out? A Yes. Q You went to Brunswick's office? A Yes. Q When we talk about Brunswick you mean the Brunswick-Balke-Collender Company, is that correct? A That is right. Q And you talked with someone there? A Yes, with a salesman there. Q And all of these conversations with the salesman from Brunswick-Balke-Collender Company, you and Mr. Frey were both present? A Yes. * * * Q Was that before or after your contract was signed? A I

don't remember. Q You did sign a contract that day? A A sales agreement or whatever— Q An order? A An order, Yes. Q And Mr. Frey signed the order? A Yes. * * * Q Handing you Exhibit No. 6, I will ask you if that is the order you signed in Denver on March 27, 1956? A Yes, it is. Q And calling your attention to the signatures on the back, is the first signature that of Mr. Frey? A Yes. Q And is the word 'Partner' written in his handwriting? A Yes. Q And is the next signature there your signature? A Yes. Q And is the word 'Partner' written in your handwriting? A Yes. * * * Q What I mean to say was you and John Frey were going into business together when you made the deal with Brunswick-Balke-Collender Company, is that correct? A Yes. * * * Q And it was you and John, and you were going to run the bowling business and be together in that? A John was going to manage it, yes. Q John being the manager, but the two of you would be together in it? A Well, I don't know. You mean we would both manage it? Q No. I mean you were going to be in the business together? A Yes. Q Both have an interest in the business? A Yes. Q And John would be the Manager? A Yes. Q You talked about how long this arrangement was going to last? A No, I don't believe so."

In the light of this testimony of the plaintiff himself it becomes apparent that the plaintiff was not the sole owner of this business. He has described definite ownership in the two which in certain respects left an area of indefiniteness and uncertainty, but nevertheless a dual ownership.

It was, under the evidence, the intention of the parties to convert the relationship into a corporation but this they were apparently never able to accomplish. Nothing however was disclosed in the evidence which operated to give the plaintiff the right to declare an end to the dual ownership and claim the business as his own.

The description given this ownership by plaintiff ef-

fectually declared it to be a partnership. The defendant does not contend that it was not a partnership.

The conclusion reached is that here was a partnership although there is not in evidence an agreement containing either complete details of organization or of functions after organization. This court said in Bard v. Hanson, 159 Neb. 563, 68 N. W. 2d 134: "The scope of a partnership may be evidenced by written or oral agreement, or implied from the conduct of the parties and what was done by them." The acts of the parties and what was done, as disclosed by the testimony of plaintiff, indicated a partnership which was to continue until plans could be worked out and a corporation organized to take its place.

This being a partnership the plaintiff could not by injunction deprive the defendant of his possession of the partnership property and his rights in the management of the partnership business.

Section 67-318 (e), R. R. S. 1943, provides: "All partners have equal rights in the management and conduct of the partnership business."

The general rule is that one partner may not maintain an action against his copartner on account of a partnership transaction where there has been no settlement of the partnership accounts and business. See, Sanley v. Davies, 113 Neb. 614, 204 N. W. 385; Mullikin v. Pedersen, 161 Neb. 22, 71 N. W. 2d 485.

In the light of this it must be said that the judgment of the district court is correct and it should be and is affirmed.

AFFIRMED.