JOHN H. FREY, APPELLANT AND CROSS-APPELLEE, V. ALBERT P. HAUKE, APPELLEE AND CROSS-APPELLANT.

108 N. W. 2d 228

Filed March 17, 1961. No. 34873.

*Wright & Simmons, James R. Hancock,* and *Robert M. Harris,* for appellant.

*Lyman & Winner* and *Stubbs & Metz,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in equity brought by John H. Frey as plaintiff in the district court for Scotts Bluff County, against Albert P. Hauke, defendant, for an accounting between the respective parties as partners, and for damages for the breach of a partnership agreement entered into by them.

We set forth certain findings of the trial court perti-

nent to this appeal: The decision in the case of Hauke v. Frey, 167 Neb. 398, 93 N. W. 2d 183, was the law in this action, and the statement appearing therein, as follows: "* * * indicated a partnership which was to continue until plans could be worked out and a corporation organized to take its place" was binding upon the trial court; that a partnership for a definite term or particular undertaking as described in paragraph 1 (b) of section 67-331, R. R. S. 1943, existed between the parties prior to March 14, 1957; that the partnership was not a partnership at will at the time of its commencement; that the partnership became a partnership at will on March 14, 1957, by reason of a writing designated exhibit No. 25; that the partnership being a partnership at will on March 19, 1957, the defendant had a right to terminate the same, and plaintiff was not entitled to damages for the wrongful termination thereof; that the depreciation figure used in the accounting procedure of the firm's accountant was proper; that prior to the dissolution of the partnership the profits of the same were $5,722.92, one-half of which or $2,861.46, was awarded to the plaintiff; that the good will of the partnership at the time of dissolution was valued at $10,000, one-half of which or $5,000 was awarded to the plaintiff; that the income and expense statements prepared by the accountant for the partnership, shown by exhibits, accurately represented the income and expense of the partnership from September 1, 1956, through March 31, 1957; that the obligation of the plaintiff on the conditional sales contract should thereafter be defendant's separate obligation and plaintiff held harmless from this and all other obligations of the partnership; that the plaintiff drew no salary for that part of March 1957 prior to March 19, 1957, and was entitled to 19/31 of $425, or $260.49 for the period from March 1 to March 19, 1957; and that the plaintiff was entitled to interest at the rate of 6 percent per annum from March 19, 1957, on all sums found due on that date. In all, the trial court

awarded the plaintiff $8,241.95 plus interest at 6 percent per annum from March 19, 1957, until paid, and taxed the costs to the defendant.

The plaintiff filed a motion for new trial; the defendant filed a motion for new trial; and the trial court overruled both of these motions. The plaintiff perfected appeal to this court.

The plaintiff's petition alleged in substance that on or about March 27, 1956, he and the defendant orally entered into a partnership agreement for the construction, purchase, and operation of equipment for a bowling alley to be housed in a building to be built by the defendant and owned by him; that the defendant was to advance the funds necessary for the commencement of the business; that the plaintiff was to manage the business and receive a salary of $425 a month; that the defendant was to receive $500 a month for the rent of the building; and that each party was to share evenly in the partnership assets, that is, the profits, and in the same degree as to the losses. The petition further alleged that the agreed life of the partnership was the life of the parties; that the business was established in conformity with the oral agreement between the parties; that the parties individually and as partners executed notes and other instruments obligating them to pay large sums of money in behalf of the business; that the partnership agreement was complied with in all respects until March 19, 1957; that since March 19, 1957, the defendant has had exclusive possession of the business, dealt with it as his own, received the profits, failed to account to the plaintiff, and had therefore breached the partnership agreement; and that the defendant wrongfully dissolved the partnership and converted the partnership property to his own use and deprived the plaintiff of expected profits and salary during the life of the partnership, to the plaintiff's damage.

The defendant's amended answer denied the allegations of the plaintiff's petition except those specifically

admitted, and alleged that any partnership agreement between the parties was dissolved and terminated not later than March 14, 1957; that no profit was made from the partnership business prior to that date; that any agreement for the partnership did not fix any term for the continuance of the same; that it was a partnership at will; that the plaintiff did not contribute any capital to the business; and that insofar as any personal obligations the plaintiff had assumed relating thereto, if any, the defendant offered to hold the plaintiff harmless with respect thereto.

The plaintiff's reply to the defendant's amended answer alleged certain facts in addition to those set forth in his petition, and prayed for an accounting for the period of time from the commencement of the partnership business to and including the date of any decree that might be entered and the time thereafter during which such matter might be pending upon appeal until a full accounting was made; for damages for breach of the partnership agreement; and for such other relief as may be just and equitable.

The plaintiff set forth numerous assignments of error. We will hereinafter discuss those deemed pertinent to a determination of this appeal.

The plaintiff testified that he and the defendant talked about going into the bowling alley business together on different occasions, and discussed how much cash it would take to get into the business and the length of the finance plan with reference to purchasing equipment. The plaintiff further testified that he and the defendant went to Denver to talk to the Brunswick-Balke-Collender people, hereafter referred to as the Brunswick Company, about going into the bowling alley business; that on March 27, 1956, he and the defendant ordered bowling alley equipment, and both of them signed the order as partners. This order was later modified. He further testified that he and the defendant had an oral agreement that the defendant was to re-

ceive $500 a month for the rental of a building; that the plaintiff was to receive $425 a month as salary for managing the business; that the Brunswick Company was to be paid for the bowling equipment out of the proceeds of the business; and that after the Brunswick equipment was paid for there would be money available to reinvest in other bowling equipment and expand the business which both the plaintiff and defendant agreed could occur. No length of time was specified as to how long the plaintiff was to manage the business. It was agreed that the business would be called the Bowl Arena. The building was to be constructed to accommodate 12 bowling alleys. An order was signed for 10 bowling alleys.

The plaintiff had an agreement with Terry Carpenter reciting that Carpenter would not start in the bowling alley business, and that the plaintiff would not sell any alcoholic liquor or beer in Terrytown.

The defendant owned lots near Terrytown, between Scottsbluff and Gering, which were in a suitable location for a bowling alley and upon which the building was to be constructed. The defendant hired a contractor to build the building. The defendant used his own funds to pay for the construction of the building. The business was commenced on August 31, 1956. The plaintiff acted as manager, kept the daily records, and advised the firm's accountant with respect to keeping the books. The plaintiff, by his promotion of the business, succeeded in establishing 96 bowling teams in 7 leagues, and arranged for 30 or 35 weeks of bowling. These teams bowled on an average of once a week, except on certain holidays. There was also open bowling, which was distinct from the leagues.

On March 14, 1957, the plaintiff wrote a letter to the defendant in which the plaintiff said that he and the defendant could not continue business together any longer and that the only alternative would be for the plaintiff to buy out the defendant, the defendant to buy out the plaintiff, or the two find someone to buy

out both of them. The plaintiff then made certain proposals to the defendant with respect to the defendant buying the plaintiff out and with respect to the plaintiff buying the defendant out. In this letter the plaintiff stated that his offer would be in effect only until March 16, 1957, since the defendant had fixed a time limit for the plaintiff to decide what he wished to do.

There is an exhibit in evidence which shows the conditions under which the defendant would continue with the business venture, primarily by the formation of a corporation with the assets of the business to be the property of the corporation, a stock purchasing agreement, and other matters relating to the business and the corporation, if formed.

On March 18, 1957, the plaintiff's managership of the business was terminated by a letter to the plaintiff by the defendant.

On March 19, 1957, Hauke filed a petition in the district court for Scotts Bluff County, seeking to enjoin Frey from participation in the business. A temporary restraining order was granted. Frey filed an answer and cross-petition. The district court decided that injunction should not be granted, and dissolved the restraining order. Hauke appealed to this court, and the judgment of the district court was affirmed. See Hauke v. Frey, *supra*.

With reference to the value of the business on March 19, 1957, the plaintiff testified that prior to opening the business the defendant advanced a downpayment for the bowling alley equipment, fountain equipment, and furniture and equipment in a total amount of $22,943.94, $15,500 of which was a downpayment for the bowling equipment with the Brunswick Company. The contribution of the plaintiff to the partnership amounted to $120.60, which the trial court ordered returned to the plaintiff. The plaintiff also secured the contract of non-competition from Terry Carpenter, which he stated had value. Just how much value is not determinable from

the record. The plaintiff and defendant contracted to pay $42,814.98 in installments on the bowling equipment.

Considering all of the factors, such as the value of the equipment in place, location of the business, the number of alleys with relation to the population, the fact that the building was built for a bowling alley, that the landlord had an interest in the business providing a favorable rent price for the bowling alleys, the potentiality of the business over the years, the fact that the building was heated and had air-conditioning facilities, also that there was adequate parking, and that the business was located outside of the city limits creating a favorable tax situation, the expected life of the bowling equipment, but not excluding the unpaid balance on the conditional sales contract, the value of the business in the plaintiff's opinion was $92,000.

The defendant testified that the value of the business on March 17, 1957, was $23,000, that was what he had in it, and it would have no other value.

In August 1958, the defendant installed automatic pinsetters. Prior to this installment there were semi-automatic pinsetters installed, model B-10, which were traded in on the new equipment. The total price of the new equipment was $119,958.84. The total downpayment was $9,666. The time balance owed was $110,-292.84. This order was made by the defendant with the Brunswick Company, and he alone signed the order.

An expert testified that the bowling league season starts in September and continues ·to be good into April of each year; that this type of business has increased greatly in the last few years; that there are very few bowling alley failures; that he knew of no repossessed bowling alleys; and that with reasonable maintenance all of the equipment that was purchased by the plaintiff and defendant, with the exception of the bowling pins, would have a life of about 30 years. This witness further testified that a profit of from 17 to 25 percent on the investment would be expected with a well-managed

bowling alley; and that in any community where the population ratio is one alley to every thousand people or more, the business would be good.

The record shows that in addition to the 10 alleys owned by the parties, there were 8 other alleys in the community, and that the population of the trade area was estimated at 80,000 people.

We have examined the exhibits relating to the amount of business transacted when the plaintiff was manager of the business and when others managed the business after the plaintiff ceased to do so. In addition we have examined all of the exhibits that in any way pertain to the business as to its gross business in the years stated in such exhibits, the net return of the business, and the expenses relative thereto. It would serve no useful purpose to set out these figures.

The defendant testified that he never discussed with the plaintiff what would be invested by either him or the plaintiff, or the respective interests that each would have in the business before they went to Denver; that while they were in Denver he made a downpayment on the bowling equipment; that the plaintiff had no money to make a downpayment; that after he returned from Denver he and the plaintiff endeavored to raise some money, without success; and that the defendant borrowed money on his life insurance, from the bank, and from his personal account in a drugstore business, in the amount of $70,000. He further testified that the construction of the building started about May 1, 1956; that he had no conversation with the plaintiff as to how long the business would continue; that after the building was constructed, up to the time of trial, he never had any conversation with the plaintiff with reference to the continuation of the business; that he never had a conversation with the plaintiff as to the profits of the business paying for the Brunswick Company equipment; and that a salesman connected with the equipment company in a conversation with the plain-

tiff and defendant when they were looking over a bowling alley establishment in Golden, Colorado, indicated the possibility of making payments on the equipment from the profits of the business.

On cross-examination the defendant testified that he tried to agree with the plaintiff, but they could not arrive at any agreement. However, he and the plaintiff did agree on the amount of rent, the name of the business, the plaintiff's salary, and that the plaintiff was to manage the business.

There is testimony in the record to the effect that every 10 years the Brunswick Company comes out with a new line of equipment used for modernizing the bowling alley business. This did not mean that all of the items were worn out, just that they would be out of style. The losses because of depreciation of equipment used would be on a 10-year basis.

Another witness who handled bowling alleys for resale testified that from past experience certain items will be changed, not periodically but probably within a 10-year period; and that all accessory items will be changed, such as ball returns, seating arrangements, scoring tables or Tell-A-Scores, that is, the styles would be changed, but not so much the basic use of the items.

An accountant employed by Gustafson, the head of an accounting firm, set up the books of the partnership. This witness testified that the books were set up with all equipment at a 10 percent depreciation rate for federal income tax purposes; and that he was not requested to use that rate of depreciation by either the plaintiff or defendant.

An accountant for the defendant, who prepared exhibits for the defendant in this trial, testified that he set up the defendant's books for the Bowl Arena on a 10 percent depreciation basis without any direction from anyone. The reason for doing so was that such depreciation would be acceptable to the Internal Revenue

Service as a method of depreciation for income tax purposes.

In Hauke v. Frey, *supra,* this court said: "It was, under the evidence, the intention of the parties to convert the relationship into a corporation but this they were apparently never able to accomplish. * * *

"The conclusion reached is that there was a partnership although there is not in evidence an agreement containing either complete details of organization or of functions after organization. This court said in Bard v. Hanson, 159 Neb. 563, 68 N. W. 2d 134: 'The scope of a partnership may be evidenced by written or oral agreement, or implied from the conduct of the parties and what was done by them.' The acts of the parties and what was done, as disclosed by the testimony of plaintiff, indicated a partnership which was to continue until plans could be worked out and a corporation organized to take its place.

"This being a partnership the plaintiff could not by injunction deprive the defendant of his possession of the partnership property and his rights in the management of the partnership business.

"Section 67-318 (e), R. R. S. 1943, provides: 'All partners have equal rights in the management and conduct of the partnership business.'

"The general rule is that one partner may not maintain an action against his copartner on account of a partnership transaction where there has been no settlement of the partnership accounts and business. See, Sanley v. Davies, 113 Neb. 614, 204 N. W. 385; Mullikin v. Pedersen, 161 Neb. 22, 71 N. W. 2d 485."

When a question of fact is once determined on its merits, that question is settled so far as the litigants are concerned and it may not be relitigated between the same parties. See, Gilcrist v. Wright, 169 Neb. 799, 101 N. W. 2d 158; Shepard v. City of Friend, 141 Neb. 866, 5 N. W. 2d 108; Niklaus v. Phoenix Indemnity Co., 166 Neb. 438, 89 N. W. 2d 258.

We believe that this court's opinion in Hauke v. Frey, *supra,* is clear in that it held that there was a partnership existing between the plaintiff Hauke and the defendant Frey; that injunction would not prevail as against the defendant Frey; and that it was the intent of the parties to form a corporation. These are facts which cannot be relitigated.

The plaintiff contends that the defendant has taken the plaintiff's share of the business originated by him and a substantial income expected from such business for the rest of his life; further, that the amounts awarded to plaintiff by the trial court were substantially less than the damage actually sustained by the plaintiff; and that the definite term of the partnership terminated not earlier than May 15, 1961, the date of the last payment due the Brunswick Company on the conditional sales agreement for the purchase of the bowling alley equipment.

We have heretofore made reference to exhibit No. 25, a letter dated March 14, 1957, written by the plaintiff to the defendant. The trial court found that exhibit No. 25 was not admissible as an admission against interest so far as the values set forth therein, it being an offer in compromise, but that exhibit No. 25 was admissible to show that the plaintiff, by writing the letter to the defendant, terminated the "definite term or particular undertaking" as that term is used in section 67-331 (1) (b), R. R. S. 1943, and the term for which the partnership was to have existed became a partnership at will by reason of the writing contained in exhibit No. 25.

The burden of proof of showing a partnership for a fixed term is placed on the plaintiff in this case. The question presented is, has the plaintiff proved an oral contract, the terms of which are clear, satisfactory, and unequivocal when all of its parts and the elements of the contract are taken into consideration? See Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525.

The plaintiff's testimony is to the effect that he had an oral agreement with the defendant to pay for the bowling alley equipment out of the profits of the business. The defendant denied that there was any such agreement, but stated that he hoped that the profits of the business would pay for such equipment, and that the partnership would continue for the life of the parties.

In Owen v. Cohen, 19 Cal. 2d 147, 119 P. 2d 713, it appears that on January 2, 1940, the plaintiff and defendant entered into an oral agreement whereby they became partners in the operation of a bowling alley. The partners did not expressly fix any definite period of time for the undertaking. For the purpose of securing necessary equipment, the plaintiff advanced $6,986.63 to the partnership, with the understanding that the amount so contributed was to be considered a loan to the partnership and was to be repaid to the plaintiff out of the prospective profits of the business as soon as it could reasonably do so. Differences arose between the parties with regard to the management of the partnership affairs and their respective rights and duties under the agreement. The business opened on March 15, 1940. The action was instituted June 28, 1940. The purpose of the action was for a dissolution of the partnership and sale of its assets. The court found that the partners did not agree upon any definite term for the continuance of said partnership, nor upon any particular undertaking to be accomplished, consequently there was a partnership at will, and concluded that the plaintiff had a right to a dissolution of the partnership.

In Seufert v. Gille, 230 Mo. 453, 131 S. W. 102, 31 L. R. A. N. S. 471, the court said that the mere fact that a firm has incurred debts and charged its assets for their payment is no proof of an agreement that the firm shall continue until its debts are paid, for those debts may be paid as well after as before dissolution.

The testimony of the plaintiff is to the effect that no definite length of time, within his recollection, for the

partnership to continue was ever decided. It appears from the record that the plaintiff and defendant agreed that there was no express agreement as to a fixed time for the partnership to continue. The contract with the Brunswick Company made no requirement relating to the profits to pay for the equipment furnished. This contract provided for the payments to be completed in a period of 5 years. This fact, standing alone, would be insufficient to establish a partnership agreement for a fixed term. This would be true in view of Hauke v. Frey, *supra*, wherein the court said the acts of the parties "indicated a partnership which was to continue until plans could be worked out and a corporation organized to take its place."

In the light of the record and what has been said above, it is apparent that the parties never intended the partnership for a fixed period of time. What they really intended to do was to create a corporation. They failed in this idea as indicated in Hauke v. Frey, *supra*, which is the law of the case on this phase of it.

We believe that exhibit No. 25, part of which is heretofore mentioned, was admissible in evidence for the purpose for which the trial court admitted it. In any event, the evidence discloses that the partnership was a partnership at will, and the trial court was correct in so finding.

The plaintiff contends that he should not be bound by the book-rate depreciation as testified to by the two accountants; and that the market value of the business must be used instead of the book value to determine his interest in the partnership. Several cases are cited touching upon this proposition by both the plaintiff and defendant which we deem unnecessary to discuss. In the instant case, as we view the evidence, the plaintiff made no complaint as to how the partnership books were set up. The defendant gave Schaaf no instructions relating to the books or in what manner they should be kept. The plaintiff had access to the books at all times

until the dissolution of the partnership when they were taken over by the defendant, and was the sole manager of the business.

As stated in 40 Am. Jur., Partnership, § 323, p. 356: "One of the ordinary duties of partners is to keep true and correct books showing the firm accounts, such books being at all times open to the inspection of all the members of the firm. This duty primarily rests on the managing or active partner, and he cannot defeat the rights of his copartner to a settlement and a proper distribution of the assets by failing to keep his accounts."

The plaintiff, as manager of the business, had every opportunity to change the manner of keeping the firm books if he desired to do so. Suffice it is to say that in any event the evidence discloses that the plaintiff in fact acquiesced in the manner of keeping the partnership books. There is no merit to the plaintiff's contention as above set forth.

There are many authorities relating to the right of a partner to share in the profits after the dissolution of the partnership. With reference to the plaintiff's right to do so, we believe the following to be applicable.

In 40 Am. Jur., Partnership, § 390, p. 398, it is said: "The right of a partner to share in the profits earned by the continuation of a partnership business after the dissolution of the firm is founded upon the use to which such partner's interest in the capital of the firm has been put in earning these subsequent profits, and if the partner claiming an interest in the profits earned after the dissolution of the partnership has no interest in the assets or capital of the firm after dissolution, he is not entitled to share in the profits earned."

The plaintiff contends that the trial court erred in fixing the amount of the good will of the partnership business. The following are applicable to this proposition.

In Adams v. Adams, 156 Neb. 540, 57 N. W. 2d 131, this court said: "There is no known invariable rule

for the ascertainment of intangible or good will value. 38 C. J. S., Good Will, § 6, p. 953. There are however certain factors which must be regarded in order to arrive at a valuation. 38 C. J. S., Good Will, § 6, p. 953; 68 C. J. S., Partnership, § 396, p. 910."

In 38 C. J. S., Good Will, § 6, p. 954, it is said: "A principle applied in some cases is that the valuation of good will may be fairly arrived at by multiplying the average net profits for a period of years by a number of years, such number being suitable and proper, having reference to the nature and character of the particular business under consideration. Three factors have been said to enter into net profits: (1) Interest on the capital; (2) personal services of the party; and (3) the good will of the concern."

In 68 C. J. S., Partnership, § 69, p. 501, it is said: "The good will of a partnership has been defined as every possible advantage acquired by the firm in carrying on its business, whether connected with premises or name or other matter. Included in the good will of a partnership is the right to use the established firm name. It has been said that the chief elements of value in partnership good will are continuity of name, place, and organization."

Taking into consideration the nature of the business, the promotion thereof by the plaintiff which resulted in a substantial business, and the factors relating to good will of the business, we conclude that the trial court did not err in finding that $10,000 was the value of the good will of this business.

The defendant's brief contains a cross-appeal contending that the trial court erred by overvaluing the good will of the business at $10,000 and by awarding half of the value of the good will that had inured to the business to the plaintiff. We conclude that the cross-appeal should be dismissed.

"Actions in equity, on appeal to this court, are triable de novo, subject, however, to the rule that when evi-

dence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have adopted one version of the facts rather than the opposite." Dunbier v. Rafert, 170 Neb. 570, 103 N. W. 2d 814.

The plaintiff raised other assignments of error which we deem unnecessary to discuss in view of what has heretofore been stated.

The costs of this appeal shall be taxed to the plaintiff.

For the reasons given in this opinion we affirm the judgment of the trial court.

AFFIRMED.

WENKE, J., not participating.