Martha Essay, appellee, v. Edward Essay, appellant.

123 N. W. 2d 20

Filed July 26, 1963.   No. 35405.

Wade H. Ellis and Jack Devoe, for appellant.

Wright, Simmons & Hancock, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

Martha Essay commenced this suit against Edward Essay for the dissolution of a partnership alleged to exist between them, for an accounting of the operation of the business, for the appointment of a receiver during the winding up of the partnership affairs, and for judgment against Edward Essay for any amount due from him to Martha Essay as disclosed by the accounting. By his answer Edward Essay denied that a partnership existed or had ever existed, and claimed to be the sole owner of the business. The trial court entered judgment for Martha Essay and against Edward Essay in the total amount of $92,517.62 with interest at 6 percent from the dates and on the amounts specified in the decree. The court directed the receiver to sell the partnership

business as a going concern and to make distribution of the proceeds in a manner subsequently to be determined by the court. Edward Essay has appealed.

For convenience we shall refer to Martha Essay as Martha and to Edward Essay as Edward. Martha is the mother of Edward. On and prior to May 13, 1946, Edward and his father, Elias Essay, were engaged in the bottling, sale, and distribution of beverages at Alliance, Nebraska. On May 13, 1946, Elias Essay died. On the day following, Martha and Edward entered into a partnership agreement, which was subsequently reduced to writing, to operate the bottling business under the names of Pepsi-Cola Bottling Company and Standard Bottling Company for a term ending December 31, 1951. Each contributed a half interest in the existing business, Martha acquiring her one-half interest by the residuary clause of the will of her husband, Elias Essay. By the terms of the agreement Martha was to be paid $150 per month as rental for the building used in the business, with a provision for a rent increase when additions under construction were completed. Edward was to be paid $200 per month as salary, and profits and losses were to be shared equally.

The business was operated under the terms and conditions of the written partnership agreement for the term therein provided. Thereafter the business continued to be operated under the sole management of Edward as before without any oral or written agreement with reference thereto. On April 13, 1960, Edward informed Martha that she had no interest in the business and that he was and had been the sole owner thereof since 1939. This suit was commenced on May 13, 1960, 30 days thereafter.

Edward contends that a partnership was not established. The evidence shows that Edward entered into a written partnership agreement with Martha, he signed various instruments with her in which they were designated as partners, he paid checks drawn by Martha on

the funds of the partnership, and he made partnership returns for income tax purposes for several years. Edward's evidence that a partnership never existed is based on technical consideration rather than on the conduct of the parties, which will be hereafter discussed.

Edward contends that the partnership agreement expired by its own terms on December 31, 1951, following its execution. Under the provisions of the Uniform Partnership Act, when a partnership undertaking is continued after its termination date without any express agreement, the rights and duties of the partners remain the same so far as is consistent with a partnership at will. § 67-323, R. R. S. 1943. The conduct of the parties brings them within this section of the statute and conclusively establishes that a partnership continued to exist.

The contention of Edward that no partnership ever existed is based on the following evidence: Edward and his father, Elias Essay, were in partnership prior to June 2, 1939. He states that on that date he purchased his father's half of the partnership for $9,500, for which he gave a note. A note for that amount signed by Edward and payable to Elias Essay was offered in evidence. It does not indicate that it was ever paid. No proof of payment was made other than the testimony of Edward. No written evidence of transfer of the partnership interest was ever made. The note was produced by Edward. The delivery of the note, its payment, and the claim of sale rest largely on the evidence of Edward. The only corroboration was a self-serving affidavit given by Edward to the Selective Service Board of Box Butte County in support of an application for military deferment, to which Elias Essay made a corroborative affidavit that the contents of Edward's affidavit were true. Edward's other contention was that the written partnership agreement was void because Martha had no right to make it. While the latter contention may have been true as to existing creditors, if there had

been any, we fail to find any valid reason for saying that it was void as between the parties. We think a consideration of all the evidence sustains the finding of the trial court that a partnership existed between Martha and Edward from the date of the execution of the written partnership agreement on May 14, 1946.

The trial court found from the evidence that the partnership was dissolved on April 13, 1960, the date Edward informed Martha that she was not a partner and never had been such. The defendant contends, if a partnership is found to exist, that it terminated on May 13, 1960, the date Martha filed her petition for the dissolution and winding up of the partnership. The effect of the evidence is that Edward, on April 13, 1960, excluded Martha from any participation in the business, denied her interest therein, and claimed it as his own. This brings the case within the provisions of the Uniform Partnership Act, section 67-329, R. R. S. 1943, which provides: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." See, also, § 67-331, R. R. S. 1943. The evidence sustains the trial court's holding that the partnership was dissolved on April 13, 1960.

Contentions are raised by Edward on various items contained in the audit approved by the trial court. In this respect the court is favored with a very helpful opinion by the trial court regarding the basis of the audit and the reasons for surcharging Edward's settlement account as the trial court did. The audit covers many years during the operation of the business during which time its gross annual sales increased from $48,000 in 1939 to $720,540.87 in 1960. The trial court attached the audit relied on in entering its judgment to the court's opinion found in the record. This court will likewise accept this audit, subject to the exceptions taken thereto by Edward on this appeal.

At the beginning of the partnership there was no money value placed on the contributions of each, the written agreement fixing the contributions of each as one-half of the existing assets of the business as of that date. The agreement made no provision for additional contributions to capital. No evidence was offered of any supplemental agreement for contributions to capital, nor is there any evidence that any such contributions were in fact made. The records of the partnership from January 1, 1950, to December 31, 1954, were not available. In 1956 the Internal Revenue Service audited the records of the partnership for the years 1950, 1951, 1952, 1953, and 1954. The parties accepted that audit which found the total investment account on December 31, 1949, to be $61,814.67. The value of each partner's share therein as of January 1, 1950, was therefore $30,907.33. The audit for the following 5 years was based on the Internal Revenue Service audit. The accounting for the year 1955 was based on the work sheets delivered by Edward to his auditor for the purpose of making up the income tax report. From 1956 to 1960 the audit was made from the books of account of the partnership kept under the direction and management of Edward. The investment account was carried forward from January 1, 1955, by dividing the profits for each year and adding one-half thereof to the investment account of each partner and deducting the withdrawals of each for each year. The evidence shows that Martha drew only for her current needs from 1950 to 1961, while Edward drew large amounts in excess of his share of salary and profits. In 1961 the audit indicates that Edward had overdrawn his share by $138,657.43, while Martha's showed a credit of $181,231.27. There is no evidence that these excessive withdrawals on the part of Edward were business expenses or for the benefit of the business. As the managing partner in charge of the business he is liable to Martha for one-half of the excessive withdrawals in the amount of $69,328.72, with interest at

6 percent from April 13, 1960. See Baum v. McBride, 152 Neb. 152, 40 N. W. 2d 649.

It is contended by Edward that he is entitled to an allowance of $89,318.31 for salary. This is based on a claimed oral agreement in 1952 with Martha that his salary would be $1,200 per month and an oral agreement in 1956 that it would be $1,500 per month. Edward testified to a further oral agreement with Martha in 1959 by which his salary was to be $22,500 per year. These alleged oral agreements were unequivocally denied by Martha. There are no bookkeeping entries indicating the payment of such items of salary. The trial court found that the salary of $200 per month provided in the written partnership agreement was controlling and credited Edward with salary on that basis. The evidence sustains the finding of the trial court that supplemental agreements with reference to Edward's salary were not established. The rule is: In a commercial partnership engaged in a business with capital invested jointly by the partners, a managing partner is not entitled to a salary for individual services, nor to an increase of authorized compensation, unless it is allowed by contract. Efner v. Reynolds, 105 Neb. 646, 181 N. W. 552; Beskas v. Calkins, 135 Neb. 323, 281 N. W. 29. The holding of the trial court that Edward's salary of $2,400 per year should be paid from annual profits, and one-half the balance of the annual net profits credited to the investment account of each partner, is correct.

Edward complains of the finding of the trial court that Martha made no withdrawals from her share of the settlement account during the years 1946 to 1954. Edward also complains of the trial court's action in assessing one-half of the undiscovered receipts, amounting to $19,254.87, against Edward, and one-half of certain insurance proceeds totaling $443, which were received by the partnership and not accounted for. Edward also complains that certain prizes won on volume of sales belonged to him and not to the partnership as

the trial court found. Edward contends further that Martha's withdrawals in 1958 and 1959 exceeded the amounts determined by the court.

Before discussing these assignments of error it is necessary to consider the nature of the partnership and the method of its operation. Edward and Martha were equal partners in which each was to share profits and losses. Edward was the managing partner and had the exclusive control of the business. He not only controlled production, sales, and distribution of products, but was responsible for the keeping of all records and books of account. As the managing partner he is required to account to the partnership for any benefit or profit derived from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property. Bode v. Prettyman, 149 Neb. 179, 30 N. W. 2d 627; Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525. See, also, Frey v. Hauke, 171 Neb. 852, 108 N. W. 2d 228; § 67-321, R. R. S. 1943. Edward therefore had a continuing duty to keep the books and records accurately and the entries therein are conclusive as against him. He is required to account for his transactions and for all money received by him or the partnership, and is liable to his copartner for his failure so to do. A partner who overdraws his share of the earnings of a partnership will ordinarily be held personally liable if his share of the partnership assets is insufficient to satisfy the excessive withdrawals. 68 C. J. S., Partnership, § 385 b, p. 897.

From 1956 to 1961 miscellaneous receipts came into the possession of the partnership, which were not accounted for, which totalled $38,509.75. As the managing partner, Edward is required to account to the partnership for these funds. Martha is entitled to one-half of these funds amounting to $19,254.87 with interest at 6 percent from the date of the dissolution of the partnership.

The evidence shows that Edward made claims under

an insurance policy for damages to partnership property totaling $443. Three checks totaling this amount were issued to the Pepsi-Cola Bottling Company by the insurance company. The checks were cashed, having been endorsed by the endorsement stamp of the Pepsi-Cola Bottling Company. The party cashing the checks was never ascertained. The partnership received the checks but no part of the money was credited to its account. Edward asserts he never knew the checks had been sent to the Pepsi-Cola Bottling Company and claims he had never seen them until produced in this proceeding. The amount was properly charged to Edward as an obligation to the partnership. One-half of the amount, $221.50 with interest at 6 percent from the date of the dissolution of the partnership, was properly held to be due to Martha from Edward.

The evidence shows that Edward received two checks from the Pepsi-Cola Company as prizes for the volume of vending machines purchased from that company. One was a prize consisting of a week-end trip for two people within 300 miles of home for having purchased 25 vending machines. The value of this prize was $250, which was sent to Edward by check. The other prize was a two-weeks trip to Bermuda, having a value of $1,176.06, which amount was sent to Edward by check. This prize was for having purchased more vending machines than any other bottler in the Denver region on a per capita basis. Edward cashed both checks and retained the money, amounting to $1,426.06. He claims this money as his own. It will be observed that the prizes were the result of purchases of vending machines by the partnership with partnership funds, in the course of the partnership business. The trial court found that the $1,426.06 was partnership property and required Edward to account for it. A partner has the duty of exercising the utmost good faith toward his copartners. He will not be permitted to derive a secret personal benefit out of partnership business. 68 C. J. S., Partner-

ship, § 99, p. 538. In the instant case the prizes were the result of the efforts of the partnership. Edward as managing partner was required to give his best efforts on behalf of the partnership in the promotion of sales of vending machines. He did nothing independent of his obligations to the partnership to win these prizes. They were won by the partnership and, in the absence of an agreement by the partners to the contrary, the prize money belongs to the partnership and must be accounted for by Edward. "The rule rests upon legal duty. The law will not permit those associated in relationships, in which mutual trust and confidence are ingredients, to put themselves in a position where their individual interests may have a tendency to cause them to relax in their vigilance for the common good, or, without knowledge or consent of their associates, to make individual profits out of the common activities." Johnson v. Ironside, 249 Mich. 35, 227 N. W. 732. Edward was properly required to account to the partnership for the $1,426.06 and $713.03 thereof is due Martha from Edward with interest at 6 percent per annum from January 1, 1959.

Edward asserts that the partnership is entitled to credit for $350 for each month Martha was paid $500 as rent for the building in which the business of the partnership was carried on. The evidence shows that Martha was paid $150 a month for the rent of the building until new construction was completed as provided in the partnership agreement of May 14, 1946. Edward admits that additional rent was agreed upon and that it had been $500 per month for a considerable period of time. The evidence does not sustain a finding that any overcharge of rent occurred. The evidence shows that Edward allocated $4,500 per year for rent and charged $1,500 per year to Martha's settlement account for several years. The trial court properly reconciled this improper allocation by awarding judgment to Martha against Edward for $3,000, it being one-

half of the $6,000 improperly allocated to Martha's settlement account. Interest was properly charged at 6 percent during the periods of time the amounts were improperly allocated.

Edward complains of the denial of his claim for salary and expenses which he filed with the receiver in the amount of $2,399.58. We find no such claim in this record, nor is it pointed out in the briefs of the parties. The claim having been filed with the receiver, it would appear that it was for the determination of the court upon the consideration of the receiver's report. We are of the opinion therefore that the trial court acted prematurely in denying this claim and that its order in so doing should be vacated and the matter left for the determination of the court on the evidence when the final report of the receiver is before the court for its approval.

The court also made the following finding: "The court further finds that after April 13, 1960 and until the appointment of the receiver, the defendant's share of the partnership investment account, being over-drawn and the plaintiff owning all of the partnership investment account, the plaintiff was entitled to all the profits earned by the partnership during this period; * * *." We think this was error.

We point out that although the dissolution of the partnership occurred on April 13, 1960, as found by the trial court, the partnership did not terminate on that date. The partnership terminates with the winding up of the partnership business. § 67-330, R. R. S. 1943. In the instant case Edward purported to divest Martha of her interest in the partnership on April 13, 1960. Thereafter Edward retained possession of all the assets of the partnership and continued to operate the business. When Martha was thus dispossessed of her interest in the partnership business she had an election of remedies. She could have demanded an accounting and claimed the value of her share with interest from the date of

dissolution, or she could demand an accounting and a winding up of the affairs of the partnership, which would include an accounting of all profits of the business until the partnership was terminated and its affairs wound up. In the one, she acquiesces in the termination of the partnership and demands payment for her interest in the partnership with interest on the money value of her investment during the time it is being used by the remaining partner or partners. In the second, she does not acquiesce in the termination of the partnership but demands a winding up of the partnership and is entitled to share in the profits until the partnership business has been finally terminated. 40 Am. Jur., Partnership, § 391, p. 399. In the case before us Martha sought the dissolution and termination of the partnership by a judicial proceeding. She has in effect elected to take the profits on her interest in the partnership until the termination of the partnership rather than to treat the business as terminated on April 13, 1960, and demand interest on her investment.

Martha relies on this court's holding in Frey v. Hauke, *supra*, to the following effect: "If a partner claiming an interest in the profits earned after the dissolution of the partnership has no interest in the assets or capital of the partnership after dissolution, he is not entitled to share in the profits earned." In that case the plaintiff brought suit for the value of his interest in the partnership and for damages for the breach of the partnership agreement. This indicates that plaintiff acquiesced in both the dissolution and the termination of the partnership. He sought the value of his interest as of the time of dissolution and damages for the alleged breach of the partnership agreement. Under such circumstances plaintiff has elected to sue upon the terminated agreement which eliminates any possible claim he might have had for future profits. The case has no application to the one at bar because of the difference in circumstances.

We hold that the net profits earned from April 13, 1960, to July 24, 1961, are to be shared equally, and that such rule applies until the partnership is terminated by a winding up of its affairs. The accounting and judgment of the district court should be modified in this respect.

A supplemental transcript and a supplemental bill of exceptions have been filed in this court which refer to issues raised and litigated in the district court after the present appeal was lodged in this court. Such issues are not before us on the present appeal and they will not be considered.

We have examined the remaining assignments of error and find no prejudicial error in them. The judgment of the district court is affirmed in part and in part reversed and the cause remanded with directions as set forth in this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.